

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, | ) ) ) | No. ED101473 |
| Plaintiff/Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | Honorable Michael T. Jamison |
| FRANK J. MICELI, ET AL., | ) ) | Filed: April 28, 2015 |
| Defendants/Respondent. | ) | |

### I. INTRODUCTION

Plaintiff Commonwealth Land Title Insurance Company appeals the judgment of the Circuit Court of St. Louis County in favor of defendants Frank J. Miceli, in his individual capacity and as trustee of the Frank Miceli Revocable Trust, the unknown beneficiaries of said trust, Stephen Miceli, in his individual capacity and as trustee of the Joseph J. Miceli Revocable Trust, the unknown beneficiaries of said trust, Miceli Homes, Inc. ("Miceli Homes"), Miceli Development Company, Miceli Holding Company, Masterwork Homes, Inc., and Miceli Masterwork Homes, Inc., D/B/A Miceli Custom Homes. Commonwealth raises three points on appeal. First, Commonwealth argues that the trial court erred by dismissing Counts I-V of its petition on the grounds of res judicata. Second, Commonwealth argues that the trial court erred by dismissing Counts VII and VIII of its petition on the grounds of res judicata and failure to

1

allege the necessary elements of either equitable lien or constructive trust. Third, Commonwealth argues that the trial court erred by denying its motion for creditor's bill and to pierce the corporate veil. We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## II. FACTS

In 2006, Miceli Homes sought to sell three houses it had constructed in Chesterfield, Missouri, to three private homebuyers. Commonwealth was to underwrite each transaction with a policy of homeowners' title insurance. In order to secure Commonwealth's participation and to complete the sales with the homebuyers, Frank Miceli, president of Miceli Homes, executed sworn affidavits attesting that all subcontractors that had worked on the houses had been paid in full for their services. Miceli's affidavit contained a request that Commonwealth issue its policies of title insurance without exception as to any possible unfiled mechanic's liens. Commonwealth did so, and the home sales were completed. Frank Miceli would later admit in deposition that the affidavits were false, and that he in fact knew at the time they were executed that many of the subcontractors had not been paid.

Soon after the sales were completed, dozens of subcontractors filed approximately 1.5 million dollars in mechanic's liens against the homebuyers' properties. Because the title insurance policies on the properties had been issued without exception as to any possible unfiled mechanic's liens, Commonwealth was obliged to defend the homebuyers and indemnify them for the full amount of the liens.

While the lien litigation was pending, the homebuyers filed cross-claims against Miceli Homes to recover the money owed to the lien claimants. After several days of trial on the cross-

2

claims, the trial court entered consent judgments against Miceli Homes. The homebuyers then assigned the judgments to Commonwealth.

This case is the product of Commonwealth's attempts to collect on the consent judgments in order to recover the approximately 1.5 million they spent to indemnify the homebuyers. By the time the consent judgments were entered against Miceli Homes, the corporation was assetless. Therefore, Commonwealth filed its own petition for damages against Miceli Homes as well as several individuals and entities related thereto, including Frank Miceli and his brother Stephen Miceli, the Frank Miceli Revocable Trust, the Joseph J. Miceli Revocable Trust, Miceli Development Company, Miceli Holding Company, Miceli Masterwork Homes, and Masterwork Homes. Counts I-V of Commonwealth's petition alleged negligent misrepresentation, fraudulent misrepresentation, negligent concealment, fraudulent concealment, and indemnification against Frank Miceli and Miceli Homes. Count VI alleged civil conspiracy against Frank and Stephen Miceli. Counts VII-VIII sought to impose an equitable lien or constructive trust on the assets of all defendants.

The defendants filed motions to dismiss, and two hearings were held before the trial court. The trial court granted Frank Miceli and Miceli Homes' motion to dismiss Counts I-V, concluding that the consent judgments assigned to Commonwealth barred its claims on the grounds of res judicata. The court initially denied the defendants' motions to dismiss as to Counts VI-VIII. The defendants then filed a second motion to dismiss Counts VI-VIII. After a third hearing, the trial court dismissed Counts VI-VIII on the basis of res judicata and failure to allege the necessary elements of civil conspiracy, equitable lien, or constructive trust.

Approximately one month after the trial court dismissed Counts VI-VIII, Commonwealth filed a separate motion against Frank Miceli, individually and as trustee of the Frank Miceli

3

Revocable Trust, Miceli Homes, Miceli Development Company, Miceli Holding Company, Miceli Masterwork Homes, and Masterwork Homes for a creditor's bill and to pierce the corporate veil. These defendants filed motions in opposition. After a hearing, the trial court granted judgment in favor of the defendants. This appeal follows.

### III. DISCUSSION

#### A. COUNTS I-V

##### 1. Standard of Review

The trial court dismissed Commonwealth's Counts I-V for failure to state a claim. "Our review of a dismissal for failure to state a claim is de novo." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 197 (Mo. App. E.D. 2009). "A motion to dismiss for failure to state a claim . . . is solely a test of the adequacy of the petition." *Id.* "[W]e accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader . . . . 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Armistead v. A.L.W. Grp.*, 155 S.W.3d 814, 816 (Mo. App. E.D. 2005) (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)).

##### 2. Analysis

In its first point on appeal, Commonwealth argues that the trial court erred by concluding that Counts I-V of its petition against Frank Miceli and Miceli Homes are barred by the consent judgments on the basis of res judicata. Commonwealth contends that the consent judgments do not bar Counts I-V, because they are "separate and distinct" claims from those underlying the consent judgments. Specifically, Commonwealth asserts that Counts I-V are based on the fact that Miceli Homes' misrepresentation about having paid all of its subcontractors induced it to

4

issue policies of title insurance, whereas the consent judgments are based on the fact that that misrepresentation induced the homebuyers to purchase their homes. Commonwealth also contends that Count I-V and the consent judgments involve different parties. Namely, Commonwealth asserts that the consent judgments were brought by the homebuyers against Miceli Homes, whereas Counts I-V were brought by Commonwealth against Miceli Homes and Frank Miceli in his individual capacity.[1]

In response, the defendants argue that Counts I-V are barred by the consent judgments, because they are based on the same basic series of transactions, i.e., the home sales in which Commonwealth, the homebuyers, Frank Miceli, and Miceli Homes all participated. Additionally, the defendants contend that Counts I-V and the consent judgments should be treated as if they were brought by the same party, because the homebuyers' assignment of the consent judgments to Commonwealth demonstrates they were in privity with one another.

"Res judicata [or claim preclusion] operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them." *Lauber-Clayton, L.L.C. v. Novus Props. Co.*, 407 S.W.3d 612, 618 (Mo. App. E.D. 2013). "The doctrine is designed to prevent a multiplicity of lawsuits." *Id.* Res judicata applies where "four identities" are present: "(1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." *Id.* "When these four identities concur, res judicata operates to bar 'any claim that was previously litigated between the same

---

[1] Commonwealth suggests that a consent judgment is not treated in the same manner as other types of final judgments for the purposes of res judicata. We disagree. A consent judgment "is accorded the same force as other judgments . . . . [and is] conclusive of matters adjudicated." *Household Fin. Corp. v. Jenkins*, 213 S.W.3d 194, 196 (Mo. App. E.D. 2007); *State ex rel. Sanders v. Martin*, 945 S.W.2d 641, 643 (Mo. App. E.D. 1997) ("The consent judgment was conclusive not only as to those matters actually decided, but as to those matters which could properly have been raised and decided."); *Adams by Northcutt v. Williams*, 838 S.W.2d 71, 73 (Mo. App. E.D. 1992) ("Upon entry of the consent judgment in the first lawsuit, all of mother's rights to remedies against father with respect to all or any part of the acts or events out of which the first action arose merged into that judgment.").

parties or those in privity with them.'" *Id.* (quoting *Spath v. Norris*, 281 S.W.3d 346, 350 (Mo. App. W.D. 2009)).

"Res judicata also precludes all points 'properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.'" *Id.* (quoting *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991)). In other words, if res judicata applies, the doctrine precludes a litigant from bringing 'claims that should have been brought in the first suit.'" *Id.* (quoting *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715 (Mo. banc 2008)). "However, res judicata does not operate to preclude later litigation, including those claims that could have been brought, unless the four identities first occur." *Id.*

Here, as we will explain, the doctrine of res judicata bars Commonwealth's Counts I-V against defendant Miceli Homes, but does not bar these claims as to defendant Frank Miceli. As such, we will discuss each defendant separately, beginning with Miceli Homes. Because the trial court dismissed Counts I-V, we look only to the face of Commonwealth's petition and the consent judgments for the facts upon which the following discussion is based.[2] *See Chochorowski*, 295 S.W.3d at 197.

The consent judgments bar Commonwealth's Counts I-V against Miceli Homes, because each of the four identities of res judicata is met. First, the element of "identity of the thing sued for" is met, because the subject matter of Commonwealth's Counts I-V and the consent judgments are the same. *See Winter v. Northcutt*, 879 S.W.2d 701, 708 (Mo. App. S.D. 1994). The homebuyers, and in turn Commonwealth, both sought damages against Miceli Homes, because they were unwittingly forced to assume responsibility for approximately 1.5 million

---

[2] Even though the trial court considered matters outside the pleadings, i.e., the consent judgments, in dismissing these claims, we still apply the standard of review applicable to dismissals. *See Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 n.1 (Mo. banc 2002).

dollars in debt owed to the subcontractors that constructed the homebuyers' houses. *See, e.g.*, *Xiaoyan Gu*, 447 S.W.3d at 689 (holding identity of thing sued for was satisfied where both actions sought damages arising out of same set of facts).

Second, the element of "identity of the cause of action," is met, because Commonwealth's Counts I-V against Miceli Homes and the consent judgments arose out of the same act, contract, transaction, or series of transactions.[3] *See Chesterfield Vill.*, 64 S.W.3d at 319; *see also* Restatement (Second) of Judgments section 24 (1982) ("[The] claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."). In other words, they are based on the same set of facts. *See Chesterfield Vill.*, 64 S.W.3d at 319 ("[A] court looks to the factual bases for the claims, not the legal theories."). Both Counts I-V and the consent judgments rest upon the misrepresentation that Miceli Homes had paid all of the subcontractors that worked on the homebuyers' houses. Both rest on the fact that the homebuyers and Commonwealth participated in the home sale transactions with the understanding that the subcontractors had been paid. Finally, both rest on the fact that the homebuyers and Commonwealth thereby unwittingly became liable for the mechanic's liens that would later be filed against the properties

---

[3] This opinion and many other cases refer to the "identity of the thing sued for" and the "identity of the cause of action" as being separate elements of res judicata. *See*, *e.g.*, *King Gen. Contractors*, 821 S.W.2d at 501, *Xiaoyan Gu v. Da Hua Hu*, 447 S.W.3d 680, 689 (Mo. App. E.D. 2014), *Lauber-Clayton, L.L.C.*, 407 S.W.3d at 618. However, in *Dahn v. Dahn*, 346 S.W.3d 325, 332 n.3 (Mo. App. W.D. 2011), the court noted that the Missouri Supreme Court case of *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 319 (Mo. banc 2002), could be interpreted as "treat[ing] the 'thing sued for' and 'cause of action' as equivalent." *Dahn* 3 46 S.W.3d at 332 n.3. In *Chesterfield Village*, the Court observed:

> The key question is what is the "thing"—the claim or cause of action—that has previously been litigated? A claim is the aggregate of operative facts giving rise to a right enforceable by a court. The definition of a cause of action is nearly the same: a group of operative facts giving rise to one or more bases for suing. Whether referring to the traditional phrase "cause of action" or the modern terms "claim" and "claim for relief" used in pleading rules such as Rule 55.05, the definition centers on "facts" that form or could form the basis of the previous adjudication.

64 S.W.3d at 318 (footnotes omitted).

7

Nevertheless, Commonwealth asserts that the element of "identity of the cause of action" is defeated, because Counts I-V and the consent judgments raise different claims that require different proof. It contends that Miceli Homes' misrepresentations induced it to issue policies of title insurance, whereas those misrepresentations induced the homebuyers to purchase their homes. However, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims." Restatement (Second) of Judgments section 24, cmt. c. "This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Id.*; *see also Chesterfield Vill.*, 64 S.W.3d at 320 ("Claim preclusion 'prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced to support it.'" (quoting Fleming James Jr., Geoffrey C. Hazard, Jr. & John Leubsdorf, *Civil Procedure* section 11.8, at 684 (5th ed. 2001)). "In order for a subsequent claim on the same transaction to be considered separate, . . . there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." *Dahn*, 346 S.W.3d at 332 (alteration in original) (quoting *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 716 (Mo. banc 2008)).

Here, Commonwealth's Counts I-V and the consent judgments are based on the same ultimate facts, i.e., the misrepresentations, the home sales, and the ensuing mechanic's liens. Therefore, there is "identity of the cause of action" between those claims.

The third element of res judicata, "identity of the persons or parties to the action," is also met, because Commonwealth and the homebuyers, though not the same party in name, were in privity with one another. "A party is identical, for purposes of res judicata, when it is the same party that litigated the prior suit or when the new party was in privity with the party that litigated

8

the prior suit." *Lauber-Clayton, L.L.C.*, 407 S.W.3d at 619. "'Privity,' as a basis for satisfying the 'identical party' requirement of res judicata, 'is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court.'" *Id.* (quoting *Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo. App. W.D. 2001)). Here, Commonwealth's interest in the homebuyers' cross-claims against Miceli Homes and resulting consent judgments was more than "closely intertwined" with the homebuyers' interests. Indeed, Commonwealth was the *only* party that had an actual interest in obtaining the consent judgments.

Commonwealth's petition clearly states that the title insurance policies it issued to the homebuyers required it to indemnify and defend them against the various mechanic's liens. The import of this indemnification agreement is that the homebuyers actually stood to lose nothing in these actions. Instead, it was Commonwealth that stood to lose the approximately 1.5 million dollars that the mechanic's liens claimants sought in damages. Therefore, it was Commonwealth that had the interest in going after Miceli Homes to recoup those loses. To do so, Commonwealth's lawyers filed cross-claims against Miceli Homes on behalf of the homebuyers, and obtained consent judgments thereon. The homebuyers then assigned the consent judgments to Commonwealth, so that Commonwealth could collect from Miceli Homes. Thus, the homebuyers' and Commonwealth's interests in the consent judgments were "so closely intertwined that [Commonwealth] can be fairly said to have had [its] day in court" against Miceli Homes. *Id.* The element of "identities of the persons or parties to the action" is met, because Commonwealth and the homebuyers were in privity with one another.

Lastly, the fourth element of res judicata, "identity of the quality or status of the person for or against whom the claim is made," is easily met with respect to defendant Miceli Homes.

9

"Quality or status of the person" exists where the defendants were identical and sued in the same capacity in both suits. *See Xiaoyan Gu*, 447 S.W.3d at 692. "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement (Second) of Judgments section 36. "A party appears in his individual capacity unless, in his designation as a party or by other manifestation, it is made evident that he appears in some other capacity." *Id.* Here, there is no indication in either Commonwealth's petition on Counts I-V or the consent judgment that Miceli Homes was sued in anything but its individual capacity.[4] Accordingly, the element of "identity of the quality or status of the person for or against whom the claim is made" is met.

The consent judgments bar Commonwealth's Counts I-V against Miceli Homes, because each of the four identities of res judicata is satisfied. The trial court did not err by dismissing on this basis Counts I-V against Miceli Homes.

However, the consent judgments do not bar Commonwealth's Counts I-V against defendant Frank Miceli, because the fourth element of "identity of the quality or status of the persons for or against whom the claim is made" is not met. Again, "quality or status of the person" exists where the defendants were identical and sued in the same capacity in both suits. *See Xiaoyan Gu*, 447 S.W.3d at 692. "When two defendants are potentially liable for the same loss, the claims are considered separate and two suits can be maintained against the differing parties." *Lauber-Clayton, L.L.C.*, 407 S.W.3d at 620 (quoting *Hollida v. Hollida*, 190 S.W.3d 550, 556 (Mo. App. S.D. 2006)). As the Restatement (Second) of Judgments explains:

---

[4] We note that though Missouri case law refers to the "quality or status of the person," the rule applies to corporate entities in the same way. *See* Restatement (Second) of Judgments section 36, cmt. a ("A person, including a corporate entity, may have more than one legal capacity.").

When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim against that obligor . . . . If he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued . . . . Correlatively, if judgment is rendered against him, he is barred from bringing a subsequent action against the obligor . . . . But the claim against others who are liable for the same harm is regarded as separate. Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.

Restatement (Second) of Judgments section 49, cmt. a; *see also Lauber-Clayton, L.L.C.*, 407 S.W.3d at 620; *Hollida*, 190 S.W.3d at 556. Here, the consent judgments were entered only against Miceli Homes and not Frank Miceli in his individual capacity. Because Frank Miceli was a separate defendant not named in the consent judgments, those judgments are not res judicata as to Commonwealth's Counts I-V against him. The trial court erred by dismissing on this basis Counts I-V against Frank Miceli.

B. COUNTS VII-VIII

1. Standard of Review

The trial court dismissed Commonwealth's Counts VII-VIII. Again, our review of a dismissal is de novo. *Chochorowski*, 295 S.W.3d at 197. "[W]e accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and we construe all allegations favorably to the pleader . . . . 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Armistead*, 155 S.W.3d at 816 (quoting *Nazeri*, 860 S.W.2d at 306).

2. Analysis

In its second point on appeal, Commonwealth argues that the trial court erred by dismissing its petition on Count VII, constructive trust, and Count VIII, equitable lien, against

11

Frank Miceli and his brother Stephen Miceli, the Frank Miceli Revocable Trust, the Joseph J. Miceli Revocable Trust, Miceli Homes, Miceli Development Company, Miceli Holding Company, Miceli Masterwork Homes, and Masterwork Homes on the basis of res judicata and for failure to allege the necessary elements of either of those claims. Commonwealth contends that it stated a claim in Count VII for equitable lien, because it alleged facts showing a debt or obligation owed by the defendants, an identifiable res to which the obligation attaches, and an intent, express, or implied, that the property serve as security for the debt or obligation. Commonwealth contends that it stated a claim in Count VIII for constructive trust, because it alleged facts showing the defendants were unjustly enriched by retaining the proceeds of the sales of the homebuyers' homes. Finally, Commonwealth argues that Counts VII and VIII are not barred by the consent judgments on the basis of res judicata for substantially the same reasons it asserted regarding Counts I-V.

In response, the defendants argue that Commonwealth failed to state a claim for either an equitable lien or a constructive trust, because it failed to identify a specific "res" to which the equitable lien or constructive trust would attach. Lastly, the defendants, like Commonwealth, rely on their arguments in point one as to the matter of res judicata.

As we will explain, Commonwealth's petition fails to allege the necessary elements to sustain a claim for either equitable lien or constructive trust. We therefore need not reach the matter of res judicata. We first address Commonwealth's Count VII for equitable lien.

"Equity allows a lien to be placed on the proceeds of the sale of property on which an obligation is owed and where the law does not provide an adequate remedy and justice would suffer without equitable relief." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 133 (Mo. banc 2007) (quoting *Estate of Ripley v. Mortgage One Corp.*, 16 S.W.3d 593, 596 (Mo. App. E.D.

12

1999)). The elements required to establish an equitable lien are: "(1) a duty or an obligation owing by one person to another; (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty; and (3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation." *Id.* at 134.

Here, Commonwealth's petition fails to identify with reasonable certainty a res to which the equitable lien would attach. The petition names only the "[p]roperty and assets belonging to Stephen Miceli, Frank Miceli, the Joseph Miceli Trust, the Frank Miceli Trust, and the Miceli Corporate Defendants."[5] It provides no other detail. A plaintiff wishing to assert a claim for equitable lien cannot satisfy the requirement of identifying a res with "reasonable certainty" by naming several defendants and their "property and assets." Rather, the plaintiff must name some specific property or asset in possession of the defendant—e.g., real estate, chattel, or a financial instrument—to which she wishes the lien attached. *See Wilkinson v. Tarwater*, 393 S.W.2d 538, 542 (Mo. 1965) ("[G]enerally there must be an express agreement, or conduct or dealings of the parties from which an intention may be implied, that some specific property shall be appropriated as security for a debt or obligation before equity will consider that a lien should be declared on the property."). It is not the province of the court to inventory the possessions of the defendant and choose among them which should be subject to the lien. Further, if no specific property or asset is named, it is impossible for the plaintiff to show that said property or asset was intended by the parties to serve as security for the payment of a debt or obligation. Accordingly, Commonwealth's petition fails to state a claim for an equitable lien, because it does

---

[5] We note that Commonwealth's brief cites to several exhibits in the record regarding the value of several specific properties owned by the defendants. However, the trial court dismissed Commonwealth's Counts VII and VIII. When reviewing a motion to dismiss, we ordinarily cannot look beyond the pleadings to entertain other evidence that may be present in the record. *See Estate of Saling*, 924 S.W.2d 312, 313-14 (Mo. App. E.D. 1996); *but see Chesterfield Vill.*, 64 S.W.3d at 318 n.1 (explaining court may look beyond the pleadings to consider the former judgment for motion to dismiss based on res judicata).

not name a "res . . . which can be identified or described with reasonable certainty." *Ethridge*, 226 S.W.3d at 134. The trial court did not err by dismissing Count VII.

We now move to Commonwealth's Count VIII for constructive trust. "A court of equity may impose or declare a constructive trust to provide a remedy in cases where one who has acquired property under such circumstances as make it inequitable for him to retain it by making him or her a trustee for the person or persons injured thereby." *Ralls Cnty. Mut. Ins. Co. v. RCS Bank*, 314 S.W.3d 792, 795 (Mo. App. E.D. 2010) (quoting *Brown v. Brown*, 152 S.W.3d 911, 916 (Mo. App. W.D. 2005)). "However, the very essence of the remedy of a constructive trust is the identification of specific property or funds as the res upon which the trust may be attached." *Id.* (quoting *Blue Cross Health Servs. Inc. v. Sauer*, 800 S.W.2d 72, 76 (Mo. App. E.D. 1990)).

Here, Commonwealth's petition states only that "Frank Miceli, individually and as trustee of the Frank Miceli Revocable Trust, and Stephen Miceli, individually and as trustee for the Joseph Miceli Trust, and the Miceli Corporate Defendants are in possession of funds and/or assets purchased with those funds, which are owed to Commonwealth." For substantially the same reasons as set out regarding Commonwealth's equitable lien claim, a plaintiff wishing to assert a constructive trust cannot satisfy the requirement of identifying a specific res by merely naming several defendants and their "funds and/or assets." The plaintiff must name *discrete* funds or assets. Accordingly, Commonwealth's petition fails to state a claim for a constructive trust, and the trial court did not err by dismissing Count VIII.

C. MOTION FOR CREDITOR'S BILL AND TO PIERCE THE CORPORATE VEIL

1. Standard of Review

Commonwealth argues that we should review its motion for creditor's bill and to pierce the corporate veil as the "denial of [a] post-judgment motion[] submitted in aid of execution [or] collection." This contention is erroneous.

Though generally dependent on the existence of a prior judgment at law, a creditor's bill is a distinct claim in equity. *See Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 924, 925 (Mo. App. E.D. 1989); *see also* 21 Am. Jur. 2d *Creditors' Bills* section 2 (2015) ("Creditors' bills . . . [are] independent actions in form . . . [but] ancillary in effect where brought in aid of another proceeding or in collecting a judgment obtained in another proceeding."). In much the same way, a "motion" to pierce the corporate veil is a distinct claim in equity. *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504 (Mo. App. E.D. 1999) (holding piercing corporate veil is independent claim) [6]; *but cf.* 18 C.J.S. *Corporations* section 38 (2015) ("Without an underlying [fraud or wrong] creating corporate liability, evidence of an abuse of the corporate form is immaterial.").

Here, the record shows that the trial court treated Commonwealth's motion for creditor's bill and to pierce the corporate veil as an independent claim, not a post-judgment motion. The court rendered a final judgment, which was denominated as such and signed by the trial judge. *See Coleman v. Meritt,* 324 S.W.3d 456, 459 (Mo. App. S.D. 2010) ("A judgment is considered rendered . . . when "a writing signed by the judge and denominated 'judgment' or 'decree' is filed.'" (quoting Rule 74.01(a))). The judgment contains findings of fact, conclusions of law, and disposes of all of Commonwealth's claims. *See Huff v. Dewey & LeBoeuf, L.L.P.*, 340 S.W.3d

---

[6] *See also, e.g.*, *Mobius Mgmt. Sys., Inc. v. W. Physician Search, L.L.C.*, 175 S.W.3d 186, 187 (Mo. App. E.D. 2005) (reviewing claim to pierce the corporate veil brought as separate action to enforce prior judgment); *Patrick V. Koepke Const., Inc. v. Paletta*, 118 S.W.3d 611, 613 (Mo. App. E.D. 2003) (same); *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773 (Mo. App. E.D. 1994) (same); *Real Estate Investors Four, Inc. v. Am. Design Grp. Inc.*, 46 S.W.3d 51, 55 (Mo. App. E.D. 2001) (reviewing judgment on merits where plaintiffs plead veil piercing as separate claim in original action); *Swall v. Custom Auto. Servs., Inc.*, 831 S.W.2d 237, 238 (Mo. App. W.D. 1992) (same); *Fairbanks v. Chambers*, 665 S.W.2d 33, 36 (Mo. App. W.D. 1984) (same).

623, 627 (Mo. App. W.D. 2011) (explaining that to determine if final judgment is rendered "we look to the judgment's content, substance, and effect" (quoting *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 n. 5 (Mo. App. W.D. 2010))). Thus, we review the trial court's judgment on Commonwealth's motion as we would any other. "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

2. Analysis

In its third point on appeal, Commonwealth argues that the trial court erred by granting judgment in favor of Frank Miceli, individually and as trustee of the Frank Miceli Revocable Trust, Miceli Homes, Miceli Development Company, Miceli Holding Company, Miceli Masterwork Homes, and Masterwork Homes on its motion for creditor's bill and to pierce the corporate veil. Specifically, Commonwealth contends that Frank Miceli's deposition testimony shows that Frank had complete dominion and control over Miceli Homes, Miceli Development Company, and Miceli Holding Company, and that he used his control to avoid legal obligations under the consent judgments by discarding these enterprises in favor of Miceli Masterwork Homes and Masterwork Homes. Further, they argue that Frank Miceli disregarded the corporate form by using the selective transfer of funds between Miceli Homes, Miceli Development Company, and Miceli Holding Company to satisfy personal debts.[7] In response, the defendants

---

[7] Commonwealth argues that Miceli Homes, Miceli Development Company, and Miceli Holding Company were run as a single economic enterprise, with common ownership, management, and supervisory personnel. The trial court found that they were not run as a single enterprise. However, Commonwealth's position is irrelevant to the issue presented. Whether two corporations are run as a single economic enterprise generally pertains to the question of whether the corporate veil of a subsidiary corporation can be pierced to reach its parent, and specifically to the factor of whether the parent has complete dominion and control over the subsidiary. *See, e.g.*, *Collet v. Am. Nat. Stores, Inc.,* 708 S.W.2d 273, 284 (Mo. App. E.D. 1986). Missouri case law also suggests that if sister corporations are run as a single economic enterprise to perpetrate a fraud or wrong, the corporate veil may be pierced to provide relief. *See Camelot Carpets, Ltd. v. Metro Distrib. Co.*, 607 S.W.2d 746, 750 (Mo. App. E.D.

16

argue that Commonwealth failed to establish the proof necessary to pierce the corporate veil, and particularly the element of common ownership and control.

Both Commonwealth's motion and the trial court's judgment focused primarily on the matter of piercing the corporate veil, and whether Commonwealth would be permitted to reach beyond the corporate entity of Miceli Homes to execute the consent judgment against Frank Miceli, his trust, and other related corporations. Because the trial court erroneously declared and applied the law in regard to the matter of piercing the corporate veil, we will focus our discussion on this matter as well.

"Ordinarily, a corporation is regarded as a separate legal entity, separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." 114 Am. Jur. Proof of Facts 3d 403, section 3 (2015). Actions to pierce the corporate veil rest on an equitable doctrine used by courts to look past the corporate form and impose liability upon [those who control] the corporation—be they individuals or other corporations—when [they] create or use the corporate form to accomplish a fraud, injustice, or some unlawful purpose." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. App. E.D. 2014). The doctrine should be employed with caution, and only when the circumstances clearly justify it. *See id. at* 376. A Missouri court will disregard the corporate form and hold the corporate owners or officers liable if three elements are met:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

1980). In this case, however, it appears that Miceli Homes, Miceli Development Company, and Miceli Holding Company are all assetless or defunct, and Commonwealth wishes to reach beyond them entirely.

17

(3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*66, Inc.*, 998 S.W.2d at 40 (quoting *Collet*, 708 S.W.2d at 284). However, "[t]here is no hard and fast rule for when a court will pierce the corporate veil; the inquiry is highly fact-specific and depends on the equities of the situation at hand." *Blanks*, 450 S.W.3d at 376; *see also* 18 C.J.S. *Corporations* section 16 ("Because disregarding corporate separateness as an equitable remedy is one that differs with the circumstances of each case, no single factor or even combination of factors is dispositive . . . .").

We first address the proof of dominion and control. The trial court found that proof of dominion and control was not met, because Frank Miceli generally shared the legal authority to make decisions on behalf of Miceli Homes, Miceli Development Company, and Miceli Holding Company with Stephen Miceli and Steve Hays, the trustees of the Joseph Miceli Trust. Specifically, the trial court concluded that Frank, "as [president of the three entities], was a salaried employee running th[eir] routine day-to-day operations . . . with all financial decisions and major decisions requiring approval of the trustees."[8] The trial court also observed that Frank was not a shareholder of these companies.[9]

---

[8] The trial court also concluded that Miceli Masterwork Homes and Masterwork Homes did not have complete dominion and control over Miceli Homes, Miceli Development Company, and Miceli Holding Company. Commonwealth did not assert that they did. Rather, Commonwealth argued that Miceli Homes, Miceli Development Company, and Miceli Holding Company were cast off in favor of Miceli Masterwork Homes and Masterwork Homes in order to avoid satisfying the consent judgments. Whether Commonwealth may satisfy its judgments from the assets of Miceli Masterwork Homes or Masterwork Homes is an issue of successor corporation liability, not piercing the corporate veil, though the analysis is similar. *See* W. Fletcher, 1 *Fletcher Cyc. Corp.* section 48 (2015). If Miceli Masterwork Homes and Masterwork Homes are merely a continuation of Miceli Homes, Miceli Development Company, and Miceli Holding Company, then the former may be responsible for the latter's liabilities. *See, e.g.*, *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 711 (Mo. App. S.D. 2001).

[9] While shareholder status is a factor to be considered in assessing the degree of control an individual or entity might have over a corporation, a lack of ownership interest by itself does not defeat a claim for piercing the corporate veil. "[I]f veil piercing was solely dependent upon an individual's ownership interest in an entity, it would allow 'unscrupulous' individuals to avoid liability by acting in a capacity that does not involve ownership." 114 Am. Jur. Proof of Facts 3d 403, section 5.

18

The trial court drew an erroneous legal conclusion from these facts. The fact that more than one individual possesses decision-making authority for a corporation does not per se defeat the element of domination and control. *See Saidawi*, 987 S.W.2d at 505 (holding that several members of family, who were variously shareholders, directors, and officers of corporation, collectively possessed complete dominion and control); *Edward D. Gevers Heating & Air Conditioning Co.*, 885 S.W.2d at 774. (holding that husband and wife, who were officers, directors, and shareholders of corporation, could together possess complete dominion and control); *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 304 (Mo. App. E.D. 1987) (same). Rather, the question is whether the individual or individuals against whom the claim is asserted disregarded the corporation's existence as a distinct and separate legal entity, and instead used it as an extension of their own personal mind or will. *See 66, Inc.*, 998 S.W.2d at 40 (quoting *Collet*, 708 S.W.2d at 284). Thus, the trial court erroneously applied the law by concluding that the element of domination and control was defeated by the fact that Frank Miceli generally shared legal authority to make major financial decisions on behalf of the Miceli entities with Stephen Miceli and Steve Hays, the trustees of the Joseph Miceli Trust.

Further, with respect to determining proof of dominion and control, we focus on the transaction at issue. The first element of the test for piercing the corporate veil is met where it is shown that there was "complete domination, not only of finances, but of policy and business practice *in respect to the transaction attacked* so that the corporate entity *as to this transaction* had at the time no separate mind, will or existence of its own." *66, Inc.*, 998 S.W.2d at 40 (emphasis added) (quoting *Collet*, 708 S.W.2d at 284); *see also Grote Meat Co. v. Goldenberg*, 735 S.W.2d 379, 386 (Mo. App. E.D. 1987) (focusing on transaction-specific nature of dominion and control inquiry). Thus, the first element of piercing the corporate veil is met if Frank Miceli

19

exercised complete dominion and control over Miceli Homes in its commission of a wrong at issue in this case, even if he did not dominate all aspects of the corporation at all times.[10] The trial court erroneously applied the law by failing to examine the element of dominion and control as it pertained to the specific wrongful acts asserted by Commonwealth.

We now move to the second element of piercing the corporate veil: the existence of a fraud or wrong. The trial court concluded that this element was not satisfied, because Commonwealth knew that Miceli Homes was assetless before the consent judgments were entered. Specifically, the trial court found that Frank Miceli had testified in a deposition three months before the consent judgments that Miceli Homes had "ceased to have a checking account once it ran out of money a few months or a year [before the deposition], that [it] had no assets left, and [had] no intention to pay the lien claimants." It also found that Frank had disclosed the existence of his new, operational homebuilding corporations, Miceli Masterwork Homes and Masterwork Homes, before the consent judgments were entered. Because of this "full disclosure," the court found that the defendants had not "committed any fraud or wrong, or perpetrated a statutory violation, or violation or breach of any other positive legal duty which would allow for piercing the corporate veil."

The trial court drew an erroneous legal conclusion from these facts. Proof of the second element of piercing the corporate veil may be met where the defendant uses control of a corporation to "perpetrate the violation of . . . [a] positive legal duty." *66, Inc.*, 998 S.W.2d at 40 (quoting *Collet*, 708 S.W.2d at 284). A defendant has a positive legal duty to satisfy a judgment

---

[10] We also note that a factor to be considered in the dominion and control inquiry is whether there was a failure to observe corporate formalities. *See Real Estate Investors Four, Inc.*, 46 S.W.3d at 57. Commingling of assets is one factor indicating the corporate form has been ignored. W. Fletcher, *supra* at section 41.50. "In order to be recognized as an entity separate from its shareholders, [directors, or owners], a corporation should be operated as a distinct and separate business and financial unit, with its own books, records and bank accounts." *Id.* "Evidence that [such individuals] used corporate funds for personal purposes, mixed corporate and personal accounts, or commingled assets so that the ownership interests were indistinguishable will be weighed, along with other factors, when a disregard of corporate separateness is pleaded." *Id.*

20

against it. *See 66, Inc.*, 998 S.W.2d at 41; *Mobius Mgmt. Sys., Inc.*, 175 S.W.3d at 189. This principle rings especially true in the case of a consent judgment, which "is not a judicial determination of rights, but . . . an agreement of the parties . . . . [that] is contractual in nature."[11] *Household Fin. Corp.*, 213 S.W.3d at 196. "It is well settled in Missouri that a [contractual] promise made without the present intention to perform is a misrepresentation sufficient to demonstrate fraud." *Info. Technologies, Inc. v. Cybertel Corp.*, 66 S.W.3d 126, 128 (Mo. App. E.D. 2001). Thus, the trial court's finding that Frank Miceli entered into the consent judgments—despite the fact that Miceli Homes was assetless and had no intention to satisfy them—is evidence that the second element of piercing the corporate veil is actually met, not that Frank or the Miceli entities are blameless. *See Mobius Mgmt. Sys., Inc.*, 175 S.W.3d at 189 (piercing corporate veil where, inter alia, defendant had "signed a $175,000 consent judgment one year after [the corporation] had been abandoned," and where defendant admitted that "when he agreed to and signed the consent judgment, he knew [his corporation] was unable to pay it"); *66, Inc.*, 998 S.W.2d at 41 (piercing corporate veil where, inter alia, corporation initiated condemnation action that resulted in interest judgment against it, but had no capital or plan to acquire capital to satisfy judgment).

Moreover, the second element of piercing the corporate veil is met where the defendant uses control of a corporation to "perpetrate . . . [a] dishonest and unjust act in contravention of [a] plaintiff's legal rights." *Id.* (quoting *Collet*, 708 S.W.2d at 284). "In some situations, the corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors." *Mobius Mgmt. Sys.*, 175 S.W.3d at 188-89. "[A]ctivity conducted to strip a corporation of its assets in anticipation of impending legal liability may be considered in

---

[11] Though, as we have explained, "it is accorded the same force as other judgments . . . . [and] conclusive of matters adjudicated." *Household Fin. Corp.*, 213 S.W.3d at 196.

making the determination whether to disregard the corporate entity." W. Fletcher, *supra* at section 41.34. Here, the trial court found that Frank Miceli had disclosed prior to the consent judgments that Miceli Homes had simply been allowed to run out of money while approximately 1.5 million dollars in lien claims were pending against it, and while other Miceli-related entities, including Miceli Masterwork Homes and Masterwork Homes, continued to operate in the construction industry. The trial court erred as a matter of law by concluding that these facts are evidence that there was not a dishonest or unjust act in contravention of Commonwealth's rights.

For the foregoing reasons, the trial court erroneously declared and applied the law with respect to Commonwealth's motion for creditor's bill and to pierce the corporate veil. The trial court erred by granting judgment against Commonwealth on these claims.

## IV. CONCLUSION

We affirm the trial court's dismissal of Counts I-V with respect to defendant Miceli Homes. We also affirm the trial court's dismissal of Commonwealth's Counts VII-VIII in their entirety.

However, we reverse the trial court's dismissal of Counts I-V with respect to defendant Frank Miceli. We also reverse the trial court's judgment in favor of the defendants on Commonwealth's motion for creditor's bill and to pierce the corporate veil. We remand to the trial court for further proceedings consistent with this opinion.

_____
Lisa S. Van Amburg, Judge

Lawrence E. Mooney, P. J. and
Clifford H. Ahrens, J. concur.