

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| EPICE CORPORATION, | ) | No.ED108226 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Michael F. Stelzer |
| THE LAND REUTILIZATION | ) | |
| AUTHORITY OF THE CITY OF ST. | ) | |
| LOUIS, MISSOURI, | ) | |
| | ) | Filed: |
| Respondent. | ) | June 23, 2020 |

Epice Corporation, Inc. appeals from the judgment granting the Land Reutilization Authority of the City of St. Louis, Missouri's ("LRA") motion to dismiss four counts of Epice's petition and its motion for summary judgment on the remaining count. We affirm.

Epice's petition asserted five counts relating to real property in the City of St. Louis: Count I to quiet title, Count II for breach of contract, Count III based on promissory estoppel, Count IV for unjust enrichment and Count V for quantum meruit. The contractual and quasi-contractual claims in the last four counts were based on an alleged oral agreement between Epice and the LRA. The LRA filed a motion to dismiss those counts, arguing that pursuant to Section 432.070, all contracts with municipal corporations must be in writing. The LRA sought to dismiss the quiet title count based on res judicata, contending that title to the property had been previously litigated between these parties in federal court resulting

in a final judgment declaring that the LRA owned the property in fee simple. Epice filed suggestions in opposition, arguing that Section 432.070 did not apply to the LRA because it was not a municipal corporation and that its quiet title action was not barred by res judicata because this case raised new facts occurring after the federal case.

The trial court found that Section 432.070 applied and dismissed Counts II through V. The court found that res judicata was not a proper issue for a motion to dismiss and ordered the LRA to file a summary judgment motion instead, which it did, asserting an identical *res judicata* argument as to Count I. Epice responded that the motion should be denied because the LRA had never filed an answer nor properly pled the affirmative defense of *res judicata.* The LRA sought and was granted leave to file that answer and affirmative defense out of time. Epice also responded to the merits of the motion for summary judgment with the same argument it made in opposition to the motion to dismiss. The trial court found that res judicata applied and entered summary judgment for the LRA on Count I. This appeal follows.

We review de novo the grant of a motion to dismiss and the interpretation of the statute on which that dismissal was based. *See Miller v. Frank*, 519 S.W.3d 472, 475 (Mo. App. E.D. 2017). We also review the grant of summary judgment de novo. *See ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993).

In its first point on appeal, Epice argues that the trial court erred in dismissing its contractual and quasi-contractual claims against the LRA on the ground that there was no allegation of a written agreement as required by Section 432.070, contending that statute does not apply to the LRA. We disagree.

Section 432.070 provides that contracts with certain types of entities are required to be in writing, namely any "county, city, town, village, school township, school district or other municipal corporation." Our courts have given an expansive meaning to the undefined term "other municipal corporation" that encompasses any public corporation exercising some function of government or performing some essential public service. *See Rail Switching Services, Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 255–56 (Mo. App. E.D. 2017); *see also Pemiscot County Port Authority v. Rail Switching Services, Inc.*, 523 S.W.3d 530, 535–36 (Mo. App. S.D. 2017) (citing cases). Epice acknowledges this broad interpretation, but claims that because the LRA is expressly deemed a "public corporation" in the statute under which it was created, Section 92.875, it cannot also be a municipal corporation under Section 432.070. But the actual language of Section 92.875 expressly deems the LRA a "public corporation *acting in governmental capacity.*"

> 1. There is hereby created an authority for the management, sale, transfer and other disposition of tax delinquent lands, which authority shall be known as "The Land Reutilization Authority of the city of _____, Missouri". It shall have authority to accept the grant of any interest in real property made to it, or to accept gifts and grant in aid assistance. Such authority shall have and exercise all the powers conferred by the provisions of sections 92.700 to 92.920 necessary and incidental to the effective management, sale, transfer or other disposition of real estate acquired under and by virtue of the foreclosure of the lien for delinquent real estate taxes, as provided in sections 92.700 to 92.920, and in the exercise of such powers, the land reutilization authority shall be deemed to be a *public corporation acting in a governmental capacity.*

> 2. The land reutilization authority is hereby created to foster the public purpose of returning land which is in a nonrevenue generating nontax producing status, to effective utilization in order to provide housing, new industry, and jobs for the citizens of any city operating under the provisions of sections 92.700 to 92.920 and new tax revenues for said city.

Section 92.875 (emphasis added). Therefore, *by definition*, the LRA performs governmental functions and is within our courts' expansive interpretation of "other municipal corporations" in Section 432.070. *See Rail Switching Services, Inc.*, 533 S.W.3d at 255–56; *see also Pemiscot County Port Authority*, 523 S.W.3d at 535–36.

In addition to relying only on a cherry-picked portion of language in Section 92.875, Epice also relies on quotes from case law taken entirely out of context. Epice cites *Pippins v. City of St. Louis*, wherein this Court stated that the LRA "is a public corporation" and that it "can be sued." 823 S.W.2d 131, 133 (Mo. App. E.D. 1992). Those statements were made in the context of determining that the LRA was a separate entity from the City of St. Louis and had the capacity to be sued by the City by way of a third-party complaint in a personal injury action. *Id*. at 133. *Pippins* has nothing to do with the applicability of Section 432.875 to the LRA or whether the LRA can be sued in a contract action on an oral agreement. Epice also quotes from *Garrison-Wagner v. City of St. Louis*, in which this Court stated that a "public corporation differs from a municipal corporation in that a municipal corporation by its nature can perform proprietary and governmental functions." 646 S.W.2d 131, 133 (Mo. App. E.D. 1983). But that distinction was made in the context of determining whether the LRA was immune from suit, not whether it was a "municipal corporation" subject to Section 432.875. Moreover, we went on to conclude that because the LRA is defined as "a public corporation acting in a governmental capacity" in Section 92.875, it is "an arm of the State performing only governmental functions" and entitled to immunity. *Id*. Thus, if anything, *Garrison-Wagner* supports *our* conclusion--not Epice's contrary position--that the LRA is a public corporation acting in governmental capacity

4

and therefore within the scope of the term "other municipal corporation" in Section 432.875.

Because the LRA is subject to the written agreement requirement in Section 432.070, recovery against it for breach of an oral contract is precluded. Likewise, recovery is precluded on any theory of implied contract--such as unjust enrichment or quantum meruit--and any attempt to recover based on a theory of estoppel. *See Ballman v. O'Fallon Fire Protection District*, 459 S.W.3d 465, 467 (Mo. App. E.D. 2015) (estoppel); *Mays-Maune & Associates, Inc. v. Werner Brothers, Inc.*, 139 S.W.3d 201, 208 (Mo. App. E.D. 2004) (unjust enrichment); *Goodyear v. Junior College District of St. Louis*, 540 S.W.2d 621, 621 (Mo. App. 1976) (quantum meruit). Thus, all of Epice's counts based on an alleged oral agreement with LRA were properly dismissed.

Point I is denied.

In its three remaining three points on appeal, Epice argues that summary judgment was improperly granted on the basis of res judicata. We disagree.

Epice contends that we should reverse the summary judgment for a procedural reason: the affirmative defense of res judicata was not filed until after the LRA filed its motion based on that defense. We agree with the general principle that the affirmative defense on which summary judgment is based must be properly pled. Here, the defense was pled out of time with leave of court. Epice does not assert any claim of error with respect to the trial court granting the LRA leave, and there is none. It was entirely logical given the circumstances then before the court—namely, conversion of the motion to dismiss to a motion for summary judgment—and therefore within its discretion to allow the LRA to file its answer and affirmative defense of res judicata out of time. *See generally*

*Jamestowne Homeowners Association Trustees v. Jackson*, 417 S.W.3d 348, 359 (Mo. App. E.D. 2013) (reviewing ruling on request for leave to file answer and affirmative defenses out of time for abuse of discretion). Therefore, the affirmative defense was properly pled.

Epice insists that we must reverse and remand so that the LRA can refile the motion for summary judgment now that the answer and affirmative defense are on file, claiming that otherwise the mandatory requirements of Rule 74.07 have not been met. Nothing in Rule 74.07 or the cases Epice cites require such a result here. This is not a case in which the requirements regarding the proper format of a motion for summary judgment under Rule 74.04 were violated. *See Stegner v. Milligan*, 523 S.W.3d 538, 542 (Mo. App. W.D. 2017); *Underwood v. Kahala, LLC*, 554 S.W.3d 485, 495 (Mo. App. S.D. 2018); *Miller v. Ernst & Young*, 892 S.W.2d 387, 389 (Mo. App. E.D. 1995). Nor is this a case in which a party raised "*new* factual issues, grounds or arguments within summary judgment proceedings, without offering the other party the opportunity to respond," prejudicing that other party and warranting reversal. *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 686–87 (Mo. banc 2009) (emphasis added); *see also Cross v. Drury Inns, Inc.*, 32 S.W.3d 632, 636 (Mo. App. E.D. 2000). The res judicata affirmative defense and the arguments in the LRA's motion for summary judgment based on that defense were not new, they had been raised in an identical manner in the motion to dismiss. And Epice had not one, but two, opportunities to respond to those arguments in opposition to the motion to dismiss and in response to the motion for summary judgment. Epice has made no serious argument that it was prejudiced by any of this.[1]

---

[1] Epice's sole assertion of prejudice--not made until its reply brief--is that because of the LRA's failure to timely file an answer, Epice "was deprived of the ability to assert affirmative avoidances, like unclean hands

As to the merits of the summary judgment, Epice argues that res judicata does not bar the quiet title action because it has asserted new facts that were not adjudicated by the prior judgment in the federal case. We disagree.

Res judicata, also known as claim preclusion, "operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them." *Commonwealth Land Title Insurance Company v. Miceli*, 480 S.W.3d 354, 362-63 (Mo. App. E.D. 2015) (internal quotation marks and citations omitted). Res judicata applies when "four identities" are present: "(1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." *Id.* at 363. There is no question that the parties, the capacity in which they appeared and the property at issue are the same in both lawsuits. Thus, only the first two identities are at issue here.

Though the "identity of the thing sued for" and the "identity of the cause of action" are often cited as separate elements of the res judicata analysis, they are actually rooted in the same central question: "what is the 'thing'—the claim or cause of action—that has previously been litigated?" *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002); *see also Miceli*, 480 S.W.3d at 362, n.3 (*citing Dahn v. Dahn, 346 S.W.3d 325, 332, n.3 (Mo. App. W.D. 2011)*). The answer to that question depends on whether the "operative facts"--those facts that give rise to an enforceable right and a basis for the lawsuit--are the same as the previous lawsuit. *Chesterfield Village*, 64 S.W.3d at 318. "To determine whether a claim is barred by a former judgment, the question is

or laches for [the LRA] accepting significant amounts of tax payments and improvements to the Real Property before the Affidavit was recorded."

7

whether the claim arises out of the same act, contract or transaction." *Id.* at 318-19 (internal quotation marks omitted).

The "thing" Epice sued for in both the federal case and here is title to this property. Epice's claim to ownership of this property arises out of the same transaction and the same operative facts on which Epice based its claim of ownership in the federal case. In both cases, Epice alleged that it held a security interest in the property under a 2002 deed of trust (in which the owner conveyed a security interest in the property to a trustee for Epice to secure a promissory note) and title to the property under a 2007 deed of trust (in which a successor trustee conveyed title to the property to Epice when the promissory note was defaulted on). In the federal case, among other federal and state law claims, Epice asserted a quiet title claim as against the LRA. Epice alleged that an intervening conveyance of the property to the LRA in 2005 (after a sheriff's tax sale due to unpaid tax liens on the property resulting from ordinance violations that predated Epice's 2002 security interest) was null and void and did not extinguish Epice's rights to the property. Epice asked the court to declare it the owner of the property. On the LRA's motion for summary judgment, the federal district court found that the 2005 sheriff's deed was based on a valid tax lien and subsequent tax sale and that the LRA held fee simple title to the property. The court entered summary judgment in the LRA's favor on Epice's quiet title count in 2010. Then Epice filed this petition in 2019 and again sought to quiet title to this property and asked the court to declare it the owner. Again Epice asserted that it held title to the property under the 2007 deed of trust, which it alleged remained "unblemished and unimpeded" from 2007 until the LRA filed an affidavit in 2018 to record the federal judgment declaring the LRA the fee simple owner. Epice alleged that during that time, from 2007 to 2018, Epice had

8

been continuously maintaining the property and that because the LRA's affidavit was an untimely action to recover land under the pertinent statute of limitations, title should be quieted to Epice.

It is these new facts—the ongoing upkeep of the property in the subsequent years since the federal judgment and the LRA's filing of an affidavit in 2018—that Epice argues were not adjudicated in the previous litigation and defeat the application of res judicata here. Yes, there are new facts asserted in this petition that were not and could not have been litigated in the federal case because they had not happened yet. But they are not the *operative* facts on which Epice's claim of title is based. They are not the facts that give rise to Epice's claim of ownership. Rather, here, as in the federal quiet title claim, Epice contends it owns this property under the 2007 deed of trust that conveyed title to Epice. The additional facts occurring after the federal judgment are not asserted as a separate basis—independent of the 2007 deed—for Epice's own title. Epice does not allege that the ongoing upkeep of the property after that 2007 deed entitles it to be declared the owner of the property, it claims the 2007 deed does. Epice does not allege that the LRA's affidavit entitles Epice to be declared the owner of the property, only that the affidavit does not impede its title, which it claims was conveyed in the 2007 deed. That 2007 deed was also the basis for Epice's claim that it held title to the property in the previous federal lawsuit. Thus, that quiet title claim and this quiet title claim arise from the same transaction and are based on the same operative facts. The judgment in the previous case rejecting Epice's quiet title claim and declaring the LRA the owner precludes Epice it from relitigating the same quiet title claim here. Summary judgment was correctly entered in the LRA's favor on the quiet title count based on res judicata.

9

Points II, III and IV are denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Michael E. Gardner, J., concur.