**66, INC., Appellant,**

v.

**CRESTWOOD COMMONS REDEVELOPMENT CORPORATION, et al., Respondents.**

No. 81456.

Supreme Court of Missouri, En Banc.

Aug. 3, 1999.

Rehearing Denied Sept. 8, 1999.

Joe D. Jacobson, Martin M. Green, Clayton, for Appellant.

Gerard T. Carmody, Dan M. Lesicko, William J. Travis, St. Louis, for Respondents.

MICHAEL A. WOLFF, Judge.

### Introduction

The City of Crestwood granted redevelopment rights and the governmental power of eminent domain to Crestwood Commons, a redevelopment corporation owned by a joint venture of Hycel Partners III, L.P. and Schnuck Markets, Inc., for redevelopment of a tract of land owned by 66, Inc. When Crestwood Commons abandoned its condemnation action to acquire the 66, Inc. property by eminent domain, 66, Inc. filed this action for damages. The trial court granted summary judgment in favor of Crestwood Commons, Hycel and Schnuck. This Court granted transfer after opinion by the Court of Appeals, Eastern District. We reverse and remand. Because the trial court did not state the reasons for its grant of summary judgment, we review respondents' arguments in support of the trial court's judgment, and hold:

1. 66, Inc. has a common law claim for abandonment of condemnation; this action is not pre-empted or extinguished by section 523.045,[1] which allows an award of interest on a condemnation award after a condemnor abandons condemnation.

2. Crestwood Commons Redevelopment Corporation, which has no assets of its own and is operated solely by employees of Hycel and Schnuck, is the *alter ego* of the joint venture of Hycel and Schnuck. Accordingly, Hycel and Schnuck are responsible for claims against Crestwood Commons.

3. The claim of 66, Inc. in this case is not barred by the final judgment in an action, initiated after the filing of this present case, in which 66, Inc. made a claim to be a third-party beneficiary of the "guaranty" contract between Crestwood Commons and the City of Crestwood.

### Factual and Procedural Background

66, Inc. is the former owner of the property located in the City of Crestwood, Missouri, on which it operated the 66 Drive–In Theater. Crestwood Commons Joint Venture is a general partnership formed by Hycel and Schnuck to acquire the drive-in property. Crestwood Commons Redevelopment Corporation is an urban redevelop-

1. All statutory references are to RSMo 1994, unless otherwise indicated.

ment corporation formed pursuant to chapter 353 RSMo for the sole purpose of the condemnation action. Crestwood Commons Redevelopment Corporation was formed and is owned by the joint venture general partnership that was formed by Schnuck and Hycel.

The City of Crestwood declared the 66 Drive–In property a blighted area in 1988 and solicited contracts for its purchase and redevelopment. The Crestwood Commons Joint Venture submitted a redevelopment proposal to the city. In July 1989, Crestwood Commons Redevelopment Corporation and the city entered into a contract to redevelop the 66 Drive–In property.[2] The terms of the redevelopment contract granted Crestwood Commons the power of eminent domain to acquire the 66 Drive–In property. Under the terms of the contract, Crestwood Commons could terminate the contract only if the condemnation award exceeded $7,600,000.00, increased annually by five percent. In a separate agreement with the city, Hycel and Schnuck guaranteed Crestwood Commons' performance of its obligations to the city under the redevelopment contract.

*The First Case: The Condemnation Action*

Two days after Crestwood Commons signed the contract with the city, on July 13, 1989, Crestwood Commons filed a condemnation action against the 66 Drive–In property, when negotiations for purchase of the property from 66, Inc. were unsuccessful. The trial court denied condemnation, but the court of appeals reversed. *Crestwood Commons Redevelopment Corporation v. 66 Drive–In,* 812 S.W.2d 903, 905 (Mo.App.1991). Thereafter, in December 1991, the condemnation commissioners entered their report establishing a value of $7,399,000 for the property. Both parties filed exceptions to the report. In July 1992, Crestwood Commons abandoned the condemnation prior to trial on the exceptions. Following the abandonment, 66, Inc. filed a motion for an award of interest pursuant to section 523.045 as part of the condemnation action. In June 1993, the trial court awarded interest of $250,582.55 to 66, Inc. The interest award was affirmed by the court of appeals. *Crestwood Commons Redevelopment Corporation v. 66 Drive–In,* 882 S.W.2d 319 (Mo.App.1994). However, 66, Inc. was unable to collect the interest award because Crestwood Commons is, as noted, a corporation that has no assets.

*The Second Case: The Present Action for Damages*

In November 1992, while the motion for award of interest was pending, 66, Inc. filed the present action, which originally sought specific performance from the city and Crestwood Commons of the redevelopment agreement, on the theory that 66, Inc. was a third-party beneficiary of that contract. In March 1993—which also was before the court's decision on interest in the condemnation action—66, Inc. added a count seeking damages caused by the abandonment of the condemnation and added Hycel and Schnuck as defendants to the action, on the theory that Crestwood Commons is their *alter ego.* In August 1994, 66, Inc. amended its petition a second time, removing the request for specific performance and seeking damages in excess of $2,650,000 arising from the abandonment of the condemnation proceedings.[3]

The 66, Inc. drive-in property was sold in November 1993 for $7,934, 500. 66, Inc. alleges that it previously had a contract to sell the property to National Supermarkets for $8 million and would have closed

---

2. This sequence of events illustrates that the parties involved in the acquisition and redevelopment of the 66 Drive–In property regarded Crestwood Commons Joint Venture and Crestwood Commons Redevelopment Corporation as the same entity.

3. The operative petition at the time of the summary judgment motions was the second amended petition, which contains only a claim for damages and names Crestwood Commons, Hycel, and Schnuck as defendants.

the sale in early 1991, except that the Crestwood damages exceed the sum of interest awarded pursuant to section 523.045 in the condemnation action.

*The Third Case: The "Guaranty" Action*

In January 1994, after it was apparent that Crestwood Commons was a shell corporation that had no assets from which to collect the interest award judgment, 66, Inc. filed a separate "guaranty" action against Schnuck and Hycel for payment of the interest judgment. 66, Inc. alleged that it was a third-party beneficiary of the contract between the joint venture and the city by which Hycel and Schnuck guaranteed Crestwood Commons' performance of the redevelopment contract. 66, Inc. asserted that Crestwood Commons breached the redevelopment contract when it abandoned the condemnation even though the commissioners' award was less than $7,600,000. In August 1994, the trial court dismissed the "guaranty" action with prejudice. The court of appeals affirmed the dismissal. *66 Drive–In, Inc. v. Hycel Partners III, L.P.,* 897 S.W.2d 203 (Mo.App. 1995).[4] The present action for damages, as we have noted, was pending throughout the existence of the separate guaranty action. No motion was made in either lawsuit to consolidate 66, Inc.'s claim for damages and the guaranty claim; *see,* Rule 66.01.

### The Claim for Damages for Abandonment of Condemnation

■ Missouri courts have long recognized a claim for damages resulting from abandonment of condemnation proceedings by a private corporation. *North Missouri Railroad Co. v. Lackland,* 25 Mo. 515 (Mo. 1857). *See also, Missouri State Park*

*Board v. McDaniel,* 513 S.W.2d 447, 449 (Mo.1974) and *Nifong v. Texas Empire Pipe Line Co.,* 225 Mo.App. 1134, 40 S.W.2d 522, 524 (1931). The award of damages is based on "the broad principle of the inherent equity in the proposition that when the corporation, clothed with and exercising such extraordinary powers delegated by the government, in which it properly resides, entails expense upon the proprietor in protecting his private property rights and the proceeding is dismissed or abandoned, as a result of which he receives no compensation whatever, the corporation, on the plainest principles of justice, should reimburse him to the extent of such reasonable expenditure entailed by its voluntary act." *Nifong,* 40 S.W.2d at 524 quoting *Kirn v. Railroad,* 124 Mo.App. 271, 101 S.W. 673 (1907).

■ Missouri law draws a clear distinction between governmental and nongovernmental condemnors. Governmental condemnors, clothed with the privileges of the sovereign, are liable upon abandonment of a condemnation only if they act in bad faith. *Center School District v. Kenton,* 345 S.W.2d 120, 126 (Mo.1961); *Meadow Park Land Co. v. School District of Kansas City,* 301 Mo. 688, 257 S.W. 441 (1923). Private corporations that are granted the sovereign's power of eminent domain do not get the protection afforded by the "bad faith" standard. Non-governmental condemnors are liable for the costs, expenses and "actual losses inflicted on the land-owner, by the institution and maintenance of the proceedings to condemn his land" after the proceedings are discontinued. *Nifong, supra,* 40 S.W.2d at 523–524, quoting *Leisse v. St. Louis & Iron Mountain Railroad Co.,* 2 Mo.App. 105, 113–114.

---

4. In a memorandum supplementing its order of affirmance, the court of appeals noted its conclusion that, as a matter of law, there was nothing to hold defendants Hycel and Schnuck liable under the guaranty agreement for the condemnation interest award, based upon the court's reading of the guaranty contract. Following that appeal, in March 1997,

66, Inc. filed a creditor's bill against Hycel and Schnuck in an effort to collect the statutory interest judgment entered against Crestwood Commons in the condemnation proceeding. This action is still pending but may be rendered unnecessary after this case is remanded.

■ A separate action—— such as filed by 66, Inc. here—— is the only means for making a damages claim for abandonment of condemnation because the only damage issue recognized in a condemnation proceeding is the value of the real estate being taken. Rule 86.08. The owner's claim for expense and loss suffered from the condemnation proceeding, which is not damage to the real estate, cannot be asserted as a counterclaim in the condemnation action itself, but must be brought in a separate action for damages. Rejecting the use of a counterclaim for such damages, this Court in *State ex rel. Washington University Medical Center Redevelopment Corp. v. Gaertner*, 626 S.W.2d 373, 378 (Mo. banc 1982) said:

Pending the granting of a more expeditious form of relief by the legislature, or modification of our present rules of civil procedure by the Court, *landowner's relief lies in pursuing in a separate action the claim now alleged and stated in his counterclaim. Our prior cases have recognized such a right on the part of the landowner.*

626 S.W.2d at 378 (Emphasis added.)

In *Washington University Medical Center Redevelopment Corp., supra,* the landowner's counterclaim in the condemnation proceeding sought to recover rent lost by reason of a pending condemnation proceeding. This Court held that the landowner had to file a separate claim for damages. *Id.* In the present case, 66, Inc. has properly followed this procedure in making its claim for damages.

■ Crestwood Commons argues that the claim for damages recognized in *Lackland, supra,*, and the cases relying on that decision, is based on language in the charters of railroads and pipeline companies and is not applicable in the context of redevelopment corporations. In the line of cases from *Lackland, supra,* in 1857 to recent cases involving redevelopment corporations, e.g., *Washington University Medical Center Redevelopment Corp., supra,* the claim for damages arises from

general common law principles, not from statutory language. What is significant about the statutory charter language and the redevelopment corporation statute, section 353.130 (which grants to redevelopment corporations the eminent domain powers of chapter 523) is that these statutory provisions do not exclude the kind of claim made here by 66, Inc. Therefore, the principles expressed in *Lackland, supra,* and its progeny are applicable to Crestwood Commons.

■ The right to damages for abandonment of condemnation is not extinguished or pre-empted by the statute, section 523.045, that allows interest to be awarded in the trial court's discretion. Section 523.045 was enacted in 1959 to provide for payment of interest on the condemnation award by a condemnor that abandons the condemnation more than thirty days after the filing of the commissioners' report. Section 523.045 does not mention damages incurred by the property owner as a result of that abandonment.

Crestwood Commons asserts that this statutory award of interest is the exclusive remedy available to property owners upon abandonment of condemnation proceedings and supercedes any common law remedy. 66, Inc. contends that the legislature intended to provide an additional, non-exclusive remedy.

■ This Court's statutory construction precedents support 66, Inc.'s interpretation that section 523.045 provides an additional non-exclusive remedy. "A statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelops the remedies provided by the common law." *Dierkes v. Blue Cross & Blue Shield,* 991 S.W.2d 662, 668 (Mo.banc 1999) quoting *Detling v. Edelbrock,* 671 S.W.2d 265, 271 (Mo.1984). Section 523.045 does not expressly state that it is displacing the common law remedy.

Moreover, it is only a partial remedy for the property owner. "The provision for interest ... is different from and much less than damages authorized in some other states allowing recovery of costs and attorneys' fees upon abandonment." *Missouri State Park Bd., supra,* 513 S.W.2d at 451. "Allowance of interest on the money defendant was entitled to receive when the commissioners' report was made is not damages suffered as a result of the pendency of condemnation proceedings." *Id.* Under the common law, the property owner is entitled as a matter of right to recover attorney's fees and other reasonable expenses and losses suffered as a result of a private condemnor's abandonment of the condemnation.[5] Section 523.045 provides only for interest on the condemnation award during the period it should have been available to the property owner, and the award is not a matter of right, but is discretionary with the trial court. This Court has said that section 523.045 does not afford a condemnee some new substantive right, but is merely procedural. *State v. Kendrick,* 383 S.W.2d 740, 747 (Mo.1964). The statutory remedy provided by section 523.045 should not be interpreted to supercede the common law damages remedy. However, we leave it to the trial court, upon remand, to avoid duplicative recovery if damages claimed in the wrongful abandonment claim overlap the interest award provided by section 523.045, if that interest judgment has been paid.

### Hycel and Schnuck Can be Held Liable for Crestwood Commons' Obligations

■ Missouri law recognizes the narrow circumstances in which the "corporate veil" can be "pierced" in order to hold the corporation's owners liable for its debt. *Collet v. American National Stores, Inc.* 708 S.W.2d 273 (Mo.App.1986). *See also,*

*May Department Stores v. Union Electric,* 341 Mo. 299, 107 S.W.2d 41 (1937), *Walls by Walls v. Allen Cab Co.,* 903 S.W.2d 937, 943 (Mo.App.1995) and *K.C. Roofing Center v. On Top Roofing, Inc.,* 807 S.W.2d 545, 549 (Mo.App.1991). A Missouri court will disregard the corporate entity and hold the corporate owners liable if the following can be shown:

1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

2) Such control must have been used by the corporation to commit fraud *or* wrong, to perpetrate the violation of statutory or *other positive legal duty,* or dishonest and *unjust* act in contravention of plaintiff's legal rights; and

3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Collet, supra,* 708 S.W.2d at 284 (Emphasis added).

■ Crestwood Commons was at all times under the complete domination and control of its owners, Hycel and Schnuck, whose joint venture was the sole owner of Crestwood Commons' stock. All of Crestwood Commons' officers were officers of either Hycel or Schnuck. All of Crestwood Commons' directors were officers or directors of either Hycel or Schnuck. Crestwood Commons never had any assets, net worth, bank accounts, or records. Hycel and Schnuck directly paid all expenses and obligations relating to the condemnation, which was Crestwood Commons' only activity. Hycel and Schnuck made all business and legal decisions. According to the joint venture agreement,

---

**5.** Section 523.045 applies both to governmental and non-governmental condemnors. *See, e.g., Missouri State Park Board v. McDaniel,* 513 S.W.2d 447 (Mo.1974). As to governmental condemnors, it will be the only remedy for abandonment of condemnation unless bad faith is established.

after Crestwood Commons acquired the property through eminent domain, a portion was to have been sold immediately to Schnuck and the portion retained by the joint venture was to have been developed by Hycel. The degree of control that Hycel and Schnuck exercised over Crestwood Commons equals or exceeds the degree of control that *Collet* teaches is sufficient to find that the corporation is the *alter ego* of its shareholders in order to pierce the corporate veil and hold the shareholders liable for the corporation's legal obligations.

■ Although Hycel and Schnuck do not dispute that they exercised complete control over Crestwood Commons, they argue that a court may only disregard the separate corporate entity if the separateness is used to defraud. Crestwood Commons further argues that the use of unfunded redevelopment corporations is a common practice and, as such, cannot be a fraudulent means of shielding the principals during condemnation proceedings. However, actual fraud is not necessary for a court to hold shareholders liable for corporate debts. *K.C. Roofing Center, supra,* 807 S.W.2d at 549. Other conduct that may justify piercing the corporate veil includes the violation of statutory duties and undercapitalization. *Collet, supra,* 708 S.W.2d at 286. Inadequate capitalization is circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others. *Swall v. Custom Automotive Services, Inc.,* 831 S.W.2d 237 (Mo.App.1992). "Inadequate capitalization" means assets that are very small in comparison to known risks associated with the planned corporate enterprise. *Swall,* supra; W. Fletcher, *Fletcher Cyclopedia of Corporations,* volume 1, section 41.33 (perm. ed. rev.vol.1999). Generally, the adequacy of capitalization is measured at the time of incorporation. *Fletcher, supra,* section 41.33. Adequacy of capitalization is a fact question that turns on the nature of the business of the particular corporation. *Id.; Hickman v. Hyzer,* 261 Ga. 38,

401 S.E.2d 738 (1991). For example, in *Walls by Walls, supra,* 903 S.W.2d at 943, the court held a bank liable for a workers' compensation claim against a cab company it controlled and profited from, but did not sufficiently capitalize to provide compensation insurance.

■ In this case, the uncapitalized shell corporation was used to avoid debts arising out of the condemnation proceeding. Crestwood Commons had a positive, legal duty to pay the interest judgment and any other obligations arising from the condemnation proceeding that was initiated by it. This duty was circumvented through the use of a purportedly separate corporate entity that was in reality part of a single economic unit dominated and controlled by Hycel and Schnuck. As this Court said in *May Department Stores, supra,* 341 Mo. 299, 107 S.W.2d 41 at 55, "Making a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the rights of others."

■ The only "business" of this particular enterprise was to condemn and obtain title to 66, Inc.'s property. To limit their exposure, Hycel and Schnuck included a provision in their agreement with the city that the condemnation would be terminated if land costs proved too high. Thus, one obvious risk of the condemnation apparent at the time of incorporation was the abandonment of the condemnation and damages to the property owner resulting therefrom. At the time of incorporation, Crestwood Commons had no capital and, absent a final condemnation of the property, had no apparent plans to acquire capital. No one, given a choice, would deal with such a vacuous corporate entity without separate guaranties from third parties. From the outset, the general partnership either paid or guaranteed the expenses of all parties with whom the corporation dealt except the most obvious one; the con-

demnee who was forced by the condemnation action to deal with the corporation alone. This case presents a clear example of inadequate capitalization. The under capitalization issue was presented to the trial court on cross motions for summary judgment, and thus, there are no material facts in dispute. In these circumstances, where shareholders create and operate an unfunded, shell corporation to condemn property without making provision for payment of damages to condemnees, a wrongful purpose is established as a matter of law.

■ Finally, the requisite injury and causation are present here. *Collet, supra,* 708 S.W.2d at 284. "Abandonment of condemnation proceedings invariably damages the landowner." *Missouri State Park Bd.,* 513 S.W.2d at 449. When the dominant corporation renders the subservient corporation insolvent, "then the requisite injury and causal connection are established." *Collet,* 708 S.W.2d at 287. The Hycel and Schnuck joint venture created Crestwood Commons and maintained the corporation in an insolvent condition at all times. As partners in the joint venture, Hycel and Schnuck are jointly and severally liable for its liabilities. Section 358.150. If there are damages for which Crestwood Commons is liable, Hycel and Schnuck should be held responsible for them.

### The *Res Judicata* Defense Does Not Apply

■ Hycel, Schnuck and Crestwood Commons contend that 66, Inc.'s claim for damages arises from the same transaction or occurrence as the claim that went to judgment in the "guaranty" action; therefore *res judicata* bars the claim for damages. *Res judicata,* also known as claim preclusion, is a judicially created doctrine to inhibit multiplicity of lawsuits. *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991). Application of the doctrine can operate to require joinder of claims arising from the same transaction or occurrence even where the rule on joinder of claims, Rule 55.06, does not require such joinder. The doctrine operates as an affirmative defense, under Rule 55.08, which, only if properly invoked, will prevent litigation of a claim arising out of the same transaction or occurrence that is the subject of the earlier judgment. *Heins Implement Co. v. Missouri Highway and Transportation Commission,* 859 S.W.2d 681, 684–685 (Mo. banc 1993).

There are two unusual aspects of the *res judicata* defense asserted here. First, if Crestwood Commons, the *alter ego* of Hycel and Schnuck, had had assets against which 66, Inc. could have collected its interest judgment of $250,582.55 in the condemnation action, there would have been no need for 66, Inc. to file the "guaranty" action claiming to be a third party beneficiary of the guaranty contract Hycel and Schnuck entered into with the city. Thus the multiplicity of lawsuits in part is caused by the actions of the defendants Hycel and Schnuck and their *alter ego,* which seek to invoke the *res judicata* defense in the lawsuit that is the subject of this appeal. Second, 66, Inc.'s claim for damages was already pending when the "guaranty" action was instituted in the same circuit court. None of these defendants— Crestwood Commons, Hycel, or Schnuck— sought to consolidate this action with the "guaranty" action. Thus if there was a splitting of a claim, these defendants acquiesced in it.

■ As an affirmative defense, *res judicata* must be timely raised. *Heins Implement Co., supra,* 859 S.W.2d at 684–685. Here the defendants had the opportunity to call to the trial court's attention the pendency of purportedly related claims. Had they done so, under Rule 66.01 the trial court could have consolidated the claims and avoided the multiplicity of litigation that these parties now protest by invoking *res judicata.*

*Res judicata* is not a "stealth defense" that can be held in reserve, as this Court said in *Heins, supra,* 859 S.W.2d at 685. *Res judicata* was not raised as an affirmative defense until Crestwood Commons filed its answer to 66, Inc.'s second amended petition on May 19, 1995, long after a judgment was entered in the "guaranty" action in August 1994 and even longer after the "guaranty" action was first filed in January 1994.

 In *Green v. City of St. Louis,* 870 S.W.2d 794, 797 (Mo.banc 1994), this Court considered the conditions under which a party should be allowed belatedly to assert an affirmative defense. The factors the court should consider include: (1) the hardship to the moving party if the request is denied; (2) the reasons for failure to include the matter in a designated pleading; and (3) the injustice or prejudice caused the opposing party if the request is granted. *Id.,* citing *Stewart v. Sturms,* 784 S.W.2d 257, 262 (Mo.App.1989).

A consideration of the *Green* factors provides a substantial basis for determining that Crestwood Commons, Hycel, and Schnuck should not have been allowed to assert the defense of *res judicata* to defeat 66, Inc.'s claim for damages. When 66, Inc. filed the "guaranty" action while the claim for damages was pending, Crestwood Commons chose to defend the simultaneous actions rather than to assert that 66, Inc. was splitting its claim or to request consolidation. Crestwood Commons could hardly complain that it would be unduly burdened if the trial court addressed the merits of this action and could not fairly argue for summary judgment for the sake of judicial economy. Although Crestwood Commons was aware of the present action at the time the "guaranty" claim was filed, it did not assert the *res judicata* defense until nine months after the "guaranty" action went to judgment. It would be unjust to allow Crestwood Commons to choose to defend both actions, wait until one of them went to judgment and then argue that it is *res judicata* to the other.

**Conclusion**

Missouri common law recognizes a claim for damages arising from abandonment of condemnation proceedings by a private condemnor. In the trial court, this matter was submitted on cross motions for summary judgment. We reverse the judgment in favor of Crestwood Commons, Hycel and Schnuck. We have determined, on the basis of the undisputed facts, that Hycel and Schnuck are liable for the legal obligations of the Crestwood Commons Redevelopment Corporation. Since the facts as to the abandonment of condemnation are not in dispute, judgment should have been granted 66, Inc. as to the liability of Crestwood Commons, Hycel and Schnuck. We reverse the judgment as to this liability, and we remand for a trial, consistent with this opinion, on the issue of damages.

All concur.