**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CERNER MIDDLE EAST LIMITED, a Cayman Islands Exempted Company, *Plaintiff-Appellant*, | No. 17-35514 D.C. No. 3:16-cv-01631-YY |
| v. | |
| ICAPITAL, LLC, a U.A.E. Limited Liability Company; AHMED SAEED MAHOUD AL-BADI AL-DAHARI, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted October 12, 2018
Portland, Oregon

Filed September 23, 2019

Before: Richard R. Clifton and Consuelo M. Callahan,
Circuit Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Clifton

---

[*] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Quasi in Rem Jurisdiction

The panel reversed the district court's dismissal, for lack of personal jurisdiction, of an action seeking enforcement of a foreign arbitration award against property in Oregon owned by defendants.

Quasi in rem jurisdiction exists when a plaintiff seeks to enforce a judgment against a defendant's in-state property. Defendants argued that plaintiff could not enforce the arbitration award against the property until a court confirmed the arbitration panel's conclusion that a defendant was properly within the arbitration panel's jurisdiction. The district court agreed and dismissed for lack of quasi in rem jurisdiction.

While the appeal was pending, the Court of Appeal of Paris confirmed the arbitration panel's conclusion that the defendant was subject to its jurisdiction. The Ninth Circuit panel held that plaintiff did not waive arguments based on the French court's decision. The panel held that the French court's decision was entitled to recognition under the principles of international comity. As a result, the elements of quasi in rem jurisdiction were present. Plaintiff possessed a valid judgment against the defendant, who owned property in Oregon. The panel therefore reversed the district court's order and remanded for further proceedings.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Warren E. Gluck (argued) and Sean C. Sheely, Holland & Knight LLP, New York, New York; David J. Elkanich and Garrett S. Garfield, Holland & Knight LLP, Portland, Oregon; for Plaintiff-Appellant.

Gary I. Grenley (argued), Paul H. Trinchero, and Eryn Karpinski Hoerster, Garvey Schubert Barer, Portland, Oregon, for Defendants-Appellees.

**OPINION**

CLIFTON, Circuit Judge:

This appeal asks us to determine whether an arbitration award later confirmed by a court in France is enforceable against property in Oregon owned by a named respondent in that arbitration who contends that the arbitration panel did not have jurisdiction over him.

Plaintiff-Appellant Cerner Middle East Limited filed this action in Oregon state court to enforce an arbitration award against property in that state owned by Defendants-Appellees Ahmed Saeed Mohammed Al Badi Al Dhaheri[1] and iCapital, LLC. *Quasi in rem* jurisdiction exists when a plaintiff seeks to enforce a judgment against a defendant's in-state property.

---

[1] As sometimes happens with names translated from another language, Dhaheri's name has been spelled in various ways, including within briefs filed on his behalf and in the caption of this case. We use the spelling initially used in the first brief filed in this court on his behalf in this case.

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002). Defendants removed the case to federal district court, where they argued that Cerner could not enforce the arbitration award against Oregon property owned by Dhaheri until a court confirmed the arbitration panel's conclusion that Dhaheri was properly within the panel's jurisdiction. They therefore maintained that the award could not support the district court's exercise of *quasi in rem* jurisdiction. This district court agreed and dismissed this action.

While this appeal was pending, the Court of Appeal of Paris, a court with jurisdiction over Dhaheri, confirmed the arbitration panel's conclusion that Dhaheri was subject to the panel's jurisdiction. We hold that the French court's decision is entitled to recognition under the principles of international comity. As a result, the elements of *quasi in rem* jurisdiction are present. Cerner possesses a valid judgment against Dhaheri, who owns property in Oregon. We therefore reverse the district court's order dismissing this case for lack of personal jurisdiction and remand for further proceedings.

## I. Background

This action is one of several disputes between Cerner, on one side, and Dhaheri and entities he controls on the other.[2]

---

[2] Another one of those disputes resulted in an appeal from a decision by the U.S. District Court for the Western District of Washington, argued to the same panel of this court on the same day. Although there is substantial overlap in the factual background, the issues in the two appeals are distinct and they are resolved in separate opinions. For the opinion in that case, see *Cerner Middle East Limited v. Belbadi Enterprises, LLC*, No. 17-35157, ___ F.3d ____ (9th Cir. 2019).

Plaintiff Cerner Middle East Limited (identified in this opinion as "Cerner") is a Cayman Islands corporation with its principal place of business in Kansas City, Missouri. It is a subsidiary of Cerner Corporation, a medical services technology company based in Kansas City, whose revenue in 2018 was excess of $5 billion and whose stock is listed on the NASDAQ exchange.

Dhaheri, a businessman with substantial holdings, is a citizen and domiciliary of the United Arab Emirates ("UAE"). iCapital, LLC is a UAE limited liability corporation with its principal place of business in Abu Dhabi, UAE. Cerner alleges that Dhaheri owns and controls iCapital, LLC. iCapital's predecessor was iCapital S/E, a UAE sole proprietorship through which Dhaheri did business.

In 2008, the United Arab Emirates Ministry of Health awarded iCapital S/E a contract to develop medical information software for use in the UAE. iCapital S/E and Cerner signed a contract (the "Cerner Business Agreement" or "CBA") under which Cerner would provide hardware, software, and services for the UAE project. The CBA required the parties to submit any disputes to binding arbitration under the rules of the International Chamber of Commerce ("ICC"), specified that the seat of arbitration shall be in Paris, France, and stated that the language of an arbitration shall be English. The contract also contained a choice of law clause that stated that it "shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Missouri[.]"

Cerner filed a request for arbitration with the ICC in September 2012. It contended that iCapital S/E had failed to make payments due under the CBA. It also complained that

iCapital S/E, a sole proprietorship, had been reorganized into iCapital, LLC, a limited liability company, without Cerner's consent, which Cerner alleged was contrary to the terms of the CBA.

That dispute appeared to have been settled three months later. The settlement divided iCapital's liability into two parts: the amount that iCapital owed Cerner for the work already completed under the CBA (the "Overdue Amount"), and the amount that iCapital would owe Cerner for the future work contemplated by the CBA (the "Future Payments"). The liability of iCapital for the Overdue Amount was addressed in a Settlement and Payment Agreement ("Settlement Agreement") signed by Cerner and iCapital, LLC. It set the amount owed to Cerner for past performance and waived claims for past acts or omissions by the other party and its affiliates and their directors, officers, employees, agents, and representatives. The liability for the Future Payments was addressed in Amendment No. 5 to the CBA, also signed by Cerner and iCapital, LLC. That Amendment "re-schedule[d] the Future Payments owed to Cerner" under the original CBA.

Amendment No. 5 also revised the language of the original CBA's arbitration clause, retaining the elements described above that required the parties to submit any disputes to binding arbitration under the rules of the ICC to be conducted in English in Paris. The Settlement Agreement adopted the arbitration clause set forth in Amendment No. 5

to the CBA, and the choice of law clause set forth in the original CBA.**[3]**

Unfortunately, the settlement did not bring a lasting peace. In August 2013, Cerner initiated a second request for arbitration against iCapital, LLC and Dhaheri with the ICC, contending, among other things, that iCapital had failed to make payments called for by the Settlement Agreement. iCapital responded to the notification by objecting to the arbitration. Dhaheri declined to respond to correspondence from the arbitration administrator. The International Court of Arbitration of the ICC concluded that the arbitration should proceed against both respondents and appointed a three-member arbitral tribunal ("Tribunal").

The Tribunal issued its award in July 2015. It determined that it had jurisdiction over both iCapital, LLC and Dhaheri personally. It held that iCapital, LLC had agreed to submit to arbitration by signing the Settlement Agreement and Amendment No. 5 to the CBA. The Tribunal also concluded that it could exercise jurisdiction over Dhaheri on two separate grounds. First, Dhaheri was personally liable, as a sole proprietor, for the obligations of iCapital S/E under the original CBA and had consented to be bound by the arbitration clause in the original CBA. The Tribunal concluded that he had not been released from his obligations as the "owner" of iCapital S/E, including the agreement to arbitrate disputes that arose up to the execution of the

---

**[3]** To induce Cerner to enter the settlement, another entity owned and controlled by Dhaheri that was not previously involved in the transaction, Belbadi Enterprises, LLC entered into agreements to guarantee the obligations of iCapital (the "Guarantees"). Belbadi is a party to the other appeal presented to this panel, but is not otherwise involved in this appeal.

Settlement Agreement, at which point Cerner agreed to recognize the restructuring of iCapital S/E into iCapital, LLC. Second, Dhaheri was the alter ego of iCapital, which had signed a binding arbitration agreement. As to the merits of Cerner's claim, the Tribunal held that both iCapital, LLC and Dhaheri were liable to Cerner for more than $62 million in damages.

After the Tribunal ruled in its favor, Cerner filed a series of actions in the United States that sought to enforce either the Arbitration Award or the Guarantees. This is one of those actions.

Cerner initiated this case by filing a verified complaint in Oregon state court seeking to attach funds in an Oregon bank account owned by Dhaheri. To establish jurisdiction, Cerner relied on a *quasi in rem* theory. *Quasi in rem* jurisdiction exists when a plaintiff seeks to collect on an existing judgment by executing on the defendant's in-state property. *Glencore Grain*, 284 F.3d at 1127.

Defendants removed the case to federal court. They then filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In that motion, they maintained that the district court could not rely on the *quasi in rem* theory because Cerner did not possess a valid judgment against Dhaheri.[4] Specifically, they contended that the Tribunal's award could not be enforced because the Tribunal lacked the authority to rule on the issue of whether Dhaheri was subject to arbitration. While

---

[4] While Defendants did not dispute the validity of the Tribunal's award against iCapital, Cerner has not identified any Oregon property owned by iCapital.

Defendants apparently agreed that a court could confirm the Tribunal's decision, they contended that to make that determination a court needed to have jurisdiction over Dhaheri, which the district court in Oregon did not have. The district court agreed and granted Defendants' motion to dismiss.

This appeal followed. In the initial briefing, Defendants relied on the same arguments, that (1) the Tribunal could not independently determine whether Dhaheri had agreed to arbitrate, and (2) the district court could not confirm the Tribunal's decision because he was "entitled to have a court of *competent jurisdiction* determine whether he is bound by the arbitration provision [in the SPA and CBA]."

While this appeal was pending, on October 16, 2018, the Court of Appeal of Paris (the "Paris Court") affirmed a French trial court decision that confirmed the Arbitration Award. In reaching that conclusion, the Paris Court specifically concluded that "it was rightly that the [Tribunal] declared [that it] had jurisdiction with respect to [Dhaheri]."[5]

We asked the parties to submit supplemental briefs addressing the impact of the Paris Court's decision on this case. In their supplemental briefing, Defendants implicitly acknowledged the Paris Court as a court of competent jurisdiction. They nevertheless continued to assert that the Arbitration Award should not provide the basis for *quasi in rem* jurisdiction here.

---

[5] The decision of the Paris Court has been provided to us in its original French language form and also translated into English. We have relied upon the latter. The parties have not disputed the authenticity of the decision or the accuracy of the translation.

## II. Discussion

"We review de novo a district court's dismissal for lack of personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quotation marks omitted).

Cerner contends that the district court possesses *quasi in rem* jurisdiction. The parties agree that so-called "type two *quasi in rem*" jurisdiction, *see* Restatement (First) of Judgments § 32 (1942), requires that (1) a court of competent jurisdiction rendered a judgment against Dhaheri, and (2) Dhaheri owns property in the forum state. *See Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010). It does not appear disputed that Dhaheri owns property in Oregon, specifically a bank account, so it is the first prong that is at issue here, whether a judgment against Dhaheri has been rendered by a court of competent jurisdiction.

The argument by Defendants that persuaded the district court was that the Tribunal's award against Dhaheri was ineffective because a court with jurisdiction over Dhaheri had not determined that the Tribunal had jurisdiction over Dhaheri.**[6]** Although there is now a decision by the Paris

---

**[6]** Cerner argued to the contrary before the district court and to us, but we do not find it necessary at this point to discuss those arguments.

Court that appears to satisfy that requirement,[7] Defendants assert that we should not recognize that decision for two reasons: (1) Cerner has waived arguments based on the French decision, and (2) the French decision is not entitled to recognition under the principles of international comity. Neither contention has persuaded us.

### A.  Waiver of arguments based on the French decision

Defendants first argue that Cerner cannot rely on the decision of the Court of Appeal of Paris because Cerner did not cite the French proceedings to the district court. Although the Paris Court did not issue its decision until after the district court ruled, Defendants contend that Cerner could have cited the French trial court judgment issued on May 23, 2016.  That decision confirmed that the Arbitration Award was valid and enforceable.

We conclude that Cerner did not waive its arguments based on the Paris Court's decision.  It appears that under French law, trial court judgments are "stayed pending the appellate court decision." *Marine Travelift*, 324 F. Supp. 3d at 1007.  Defendants concede that the trial court judgment was stayed on February 9, 2017, prior to the district court's decision.  In addition, it does not appear that the French trial court decision spoke clearly to the relevant issue. The present dispute turns on whether a court has determined that the

---

[7] It appears that the decision of the Court of Appeals of Paris is considered final even if an appeal to a higher court in France is possible. *See Societe dAmenagement et de Gestion de lAbri Nautique v. Marine Travelift Inc.*, 324 F. Supp. 3d 1004, 1007–08 (E.D. Wis. 2018). Defendants did not challenge the finality of the Paris Court decision in their supplemental briefing.

Tribunal had jurisdiction over Dhaheri.  According to translated excerpts[8] of the French trial court decision, the trial court enforcement order did not discuss that issue.  Instead, it simply stated that the Arbitration Award did "not contain any provision contrary to the law or to public order."  In contrast, the Paris Court decision includes a detailed analysis explaining the basis for its conclusion that Dhaheri was subject to the jurisdiction of the Tribunal.  Thus, the Paris Court decision is uniquely relevant here.

Cerner's failure to cite the French trial court judgment to the district court does not give us reason to disregard the later decision of the Paris Court.

## B.  Recognition of a foreign court decision

Defendants also contend that the decision of the Paris Court is not entitled to recognition.  "The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by the comity of nations."  *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 (9th Cir. 2009) (quotations omitted).  "Comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation."  *Id.* at 1010–11 (quotations omitted).  "Extension of comity to a foreign judgment is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Id.* at 1011 (quotations omitted).

The considerations identified by the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113 (1895), provide "the guiding

---

[8] As Defendants have requested, we take judicial notice of the excerpts of the French trial court decision they submitted.

principles of comity." *Asvesta*, 580 F.3d at 1011; *see also Jacobs v. Tristar Indus., Ltd.*, 701 P.2d 455, 457–58 (Or. Ct. App. 1985). In *Hilton*, the Supreme Court held that foreign decisions should be accorded deference unless an underlying issue renders the judgment suspect. For instance, we may disregard a foreign judgment if it was not decided "'under a system of jurisprudence likely to secure an impartial administration of justice,'" or if it was procured by fraud. *Asvesta*, 580 F.3d at 1011 (quoting *Hilton*, 159 U.S. at 202–03).

None of those conditions apply here. Defendants do not challenge the administration of justice in France, either generally or in this particular case. As noted above, the parties themselves specified that Paris would be the location of any arbitration in both the original contract, the CBA, and in the revisions to that agreement, the Settlement Agreement and Amendment No. 5.

Defendants instead argue in essence that the Paris Court decision does not deserve deference because it was incorrect. Under certain circumstances, we may examine the merits of a foreign decision and conclude that it should not be recognized. In *Asvesta*, for example, we were asked to decide whether a Greek court decision was entitled to recognition. It involved the Hague Convention on the Civil Aspects of International Child Abduction, "an international agreement governing the return of children removed, usually by one parent in order to gain a custody advantage over the other parent, from their 'habitual residence.'" 580 F.3d at 1002–03. Because the Greek court decision did not involve the interpretation of Greek law, we examined the substance of the Greek court's decision and held that "we may properly decline to extend comity to [it] if it clearly

misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness." *Id.* at 1014.

Similarly, this case involves an international convention, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards[9] (the "Convention") and does not involve the interpretation of French law. We may refuse to recognize the Paris Court decision if it "clearly misinterprets the [] Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness." *Id.*

Although Defendants contend that the Paris Court's decision conflicts with the Convention, that argument rests on the premise that the decision failed to apply the law specified by the parties as controlling.[10] That is Missouri law, which Defendants acknowledge includes U.S. federal law regarding arbitrability under the Federal Arbitration Act (the "FAA"). According to Defendants, the Paris Court decision should not be recognized primarily because it was based on "usual practices of international trade," not U.S. law.

As noted above, our review of the decision of the district court here is de novo, but it is important to recognize that our review of the French court decision is not. We do not sit as

---

[9] The United States is a party to that multilateral treaty, sometimes called "the New York Convention." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, T.I.A.S. No. 6997 (Dec. 29, 1970).

[10] Because we conclude that the Paris Court's decision is entitled to comity even if Missouri law is controlling, we do not need to decide whether the Paris Court was in fact bound by Missouri law.

an appellate court to review the Court of Appeal of Paris by deciding whether U.S. law was misapplied.

Indeed, the parties explicitly contracted for the resolution of disputes to be by arbitration conducted in Paris, even while providing that their agreements should be governed by Missouri law, including federal law pertaining to arbitrations. Defendants have affirmatively argued that the court in Oregon lacks authority to make a decision regarding the jurisdiction of the Tribunal over Dhaheri because it does not have personal jurisdiction over Dhaheri, a citizen and resident of the UAE. The same argument would appear to apply to any other court located in this country. It could hardly be a surprise that the Arbitration Award in this case would wind up being reviewed by a French court, subject to review by a court of appeals in France, not likely to be experienced in Missouri or U.S. law. That was nearly inevitable based on the agreements entered by the parties. Under these circumstances, a foreign court would have to miss the mark by a very wide margin to fail to meet a minimum standard of reasonableness.

## C.  The decisions in this case

Using our customary terminology, the Paris Court in effect affirmed a decision by a French trial court that confirmed the Arbitration Award entered by the Tribunal. That Award explicitly explained the Tribunal's determination that Dhaheri was subject to its jurisdiction. We conclude that the decision of the Paris Court deserves recognition.

The Tribunal was mindful that there were different bodies of law that might apply to the question of jurisdiction. In the Arbitration Award it specifically identified the possibility of

applying Missouri law (the law of the contract), French law (the law of the place of arbitration), UAE law (the law where iCapital, LLC was incorporated and Dhaheri resided), and transnational principles. Its subsequent discussion on the subject cited to several Missouri and federal court decisions, and that appeared to be what the Tribunal primarily relied upon. The Tribunal offered two separate reasons for its conclusion that Dhaheri was subject to its jurisdiction.

First, the Tribunal reasoned that Dhaheri was the sole proprietor of iCapital S/E. Citing UAE law, the law that directly governed the responsibilities of a UAE sole proprietorship, it observed that Dhaheri was "personally liable for all of iCapital S/E's obligations." iCapital S/E signed the original CBA. The Tribunal therefore held that because iCapital S/E did not have a legal personality independent of Dhaheri, Dhaheri was also bound by the arbitration clause in the original CBA. Although the Tribunal recognized that Cerner had waived any claims against iCapital S/E arising out of the original CBA by signing the Settlement Agreement, it concluded that the waiver did not extend to iCapital S/E's owner, Dhaheri. The Arbitration Award cited testimony by one witness that the parties understood as much when they entered into the Settlement Agreement. It noted as well that Dhaheri did not come within the ambit of the waiver contained in the Settlement Agreement as he was not personally a party to that agreement.

Second, the Tribunal held that Dhaheri could be bound by the arbitration clauses in the Settlement Agreement and Amendment No. 5 to the CBA as iCapital, LLC's alter ego. It explained its finding that all three elements of alter ego liability under Missouri law were present. Dhaheri's

involvement in the affairs of iCapital demonstrated that iCapital had no separate mind, will, or existence of its own. Dhaheri had used his control over iCapital to permit iCapital to violate a positive legal duty by causing iCapital to breach the Settlement Agreement and CBA. The violation of that legal duty caused Cerner's injuries. The Tribunal concluded that Dhaheri was subject to its jurisdiction under either theory.

In its opinion, the Paris Court expressly discussed the question of whether the Tribunal had jurisdiction over Dhaheri. It cited to the discussion of the Tribunal in support of its conclusion on both grounds.

It then made the reference to "the usual practices of international trade" that appears to form the basis of Defendants' current argument: "Considering that, according to the usual practices of international trade, the arbitration clause inserted in an international contract has its own specific validity and effectiveness that require its application to be extended to the parties directly involved in negotiating, entering into, performing and/or terminating the contract." The court concluded that because this action arose out of the contract Dhaheri signed as the sole proprietor of iCapital S/E, Dhaheri had necessarily participated in both negotiating and entering into the Settlement Agreement and Amendment No. 5 to the CBA.

The Paris Court thus held that the Tribunal correctly determined that Dhaheri had agreed to arbitrate the claims at issue. As it stated in the translated decision: "it was rightly that the Arbitrators declared they had jurisdiction with respect to him."

Defendants challenge the Paris Court decision as not entitled to comity because it incorrectly relied on the "usual practices of international trade." According to Defendants, under the choice of law clause in the CBA, the Court of Appeal of Paris should have applied Missouri and U.S. law. They therefore maintain that the court of appeal erred by relying on the principle that an arbitration clause can bind those involved in negotiating and entering into a contract.

The reference in the Paris Court decision to "usual practices of international trade" does not mean that was all that the Paris Court considered. To the contrary, its decision contained express references to specific paragraphs in the Arbitration Award in which the Tribunal discussed and relied upon principles of Missouri law. That the French court may not have separately discussed those legal principles in its decision does not mean that it was unaware of those principles or rejected them by basing its own decision on a different body of law. The Paris Court decision cannot be disregarded because it did not repeat the Tribunal's discussion regarding the law to be applied. Nor have Defendants demonstrated that the reference by the Paris Court to the "usual practices of international trade" was in such conflict with Missouri or U.S. law that we can conclude that it failed to meet a minimum standard of reasonableness.

More broadly, Defendants misapprehend the focus of our analysis. In *Asvesta*, we recognized that a foreign decision may be entitled to comity even if we disagree with its reasoning. 580 F.3d at 1012, 1021. We will extend comity to a foreign decision unless the ultimate result fails to meet a minimum standard of reasonableness. *See id.*

It appears to us that the conclusion of the Paris Court that Dhaheri was properly bound by the arbitration clauses in the various agreements was far from unreasonable under Missouri law. The issue of "arbitrability" is one as to which federal arbitrability law is controlling. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (the "federal substantive law of arbitrability" applies to "any arbitration agreement within the coverage of the [FAA]," including cases falling under the Convention); *see also State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 n.8 (Mo. 2017) (en banc) (applying federal arbitrability law in FAA action).

Defendants argue that the question of whether the parties agreed to arbitrate here was to be decided by the court, not the arbitrator. Assuming that there was such a requirement here, it was satisfied. The court decision can come after the arbitration has been conducted, when a court confirms the arbitrator's award, as it did here. *See generally First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 940–41 (1995) (considering challenge to arbitrability raised in confirmation proceedings); *Carpenters 46 N. California Ctys. Conference Bd. v. Zcon Builders*, 96 F.3d 410, 416 (9th Cir. 1996) (directing district court to review arbitrability in confirmation proceedings).

Similarly, as to substance, it does not appear to us that the conclusion of the Paris Court failed to meet a minimum standard of reasonableness. "General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). One of those principles is "veil-piercing/alter ego." *Id.*; *accord Cent. Tr. Bank v. Graves*, 495 S.W.3d 797, 803

(Mo. Ct. App. 2016).  The French court was not well off the mark in concluding the Tribunal could have reasonably exercised jurisdiction over Dhaheri because iCapital, LLC signed a valid arbitration agreement and Dhaheri was iCapital's alter ego.[11]

Under Missouri law,[12] the corporate veil may be pierced and a court may conclude that an individual shareholder is the corporation's alter ego if (1) the shareholder exerted control over the corporation, which had "no separate mind, will or existence of its own," (2) that control was "used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of [the] plaintiff's legal rights," and (3) "[t]he control and breach of duty . . . proximately cause[d] the injury . . . complained of." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. 2013) (en banc) (emphases omitted); *accord 66, Inc. v. Crestwood*

---

[11] In different circumstances, we held in *Yang v. Majestic Blue Fisheries, LLC* that a party which did not itself sign an arbitration agreement could not compel another party which had signed an agreement with another party to arbitrate in cases governed by the Convention. 876 F.3d 996, 998–1001 (9th Cir. 2017). That case can arguably be distinguished on the facts. More importantly, other circuits have disagreed on this issue. *See, e.g.*, *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 n.7 (4th Cir. 2000) ("[T]he estoppel doctrine also applies to nonsignatories to arbitration agreements governed by the Convention."). In light of that circuit split, we cannot conclude that it would have been unreasonable for the Tribunal or the Paris Court to rely on an alter ego theory.

[12] State law governs this issue. *See First Options*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts[.]").

*Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999) (en banc). Based on Cerner's complaint, all three factors are met here. As a factual matter, Defendants have not established anything erroneous in the Tribunal's findings to that effect.

Numerous facts demonstrated Dhaheri's control over iCapital, LLC, as the Tribunal found. Dhaheri held 99% of iCapital's shares, was the "sole financial and operational decision-maker for iCapital," and "call[ed] the shots" for iCapital. In addition, Dhaheri was "a source, if not the main source" of iCapital's funds. Indeed, he referred to iCapital's debts as his own, and he informed Cerner that iCapital would make the payments called for by the CBA when he personally had the funds. That was enough under Missouri law to establish that Dhaheri controlled iCapital. *See State ex rel. Family Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 593 (Mo. Ct. App. 2017) (control established because 100% shareholder "had complete control over both the finances and management of [the corporation] and complete authority to make all decisions"); *Mobius Mgmt. Sys., Inc. v. W. Physician Search, L.L.C.*, 175 S.W.3d 186, 188 (Mo. Ct. App. 2005) (control established because 80% shareholder made all pertinent corporate decisions).

The Tribunal concluded that Dhaheri used the corporate form to violate his legal obligations under the CBA and SPA. Under Missouri law, a plaintiff can satisfy this element of the veil piercing test by showing "actual fraud" or "undercapitalization." *Crestwood Commons*, 998 S.W.2d at 41. Dhaheri knew how much money iCapital owed Cerner and promised that the necessary funds would be available, but Dhaheri failed to provide iCapital with that funding. As the Tribunal recognized, "it is now obvious that [iCapital] did not

have sufficient funds for those payments." Moreover, the Tribunal found that Dhaheri transformed iCapital into a limited liability company for the purpose of evading his contractual obligations under the CBA. Those facts supported piercing the corporate veil under Missouri law. *See Mobius*, 175 S.W.3d at 189 (second element established because controlling shareholder "admitted that, when he agreed to and signed [a consent judgment], he knew [the corporation] was unable to pay it"); *see also Crestwood Commons*, 998 S.W.2d at 41 (second element established because "the uncapitalized shell corporation was used to avoid debts arising out of the condemnation proceeding").

Finally, the third element of Missouri's veil piercing test, that Cerner suffered injury as a result, was obviously met. When Dhaheri failed to ensure that iCapital, LLC was able to make the payments that were due, Cerner suffered the injury underlying this action. Dhaheri's actions satisfy Missouri's causation standard. *See Mobius*, 175 S.W.3d at 189.

The decision of the Paris Court reasonably confirmed the Tribunal's conclusion that Dhaheri was iCapital, LLC's alter ego. On that basis, it could have determined that Dhaheri was bound by the arbitration clauses in the SPA and Amendment No. 5 to the CBA.[13]  We conclude that the Paris Court's conclusion that the Tribunal had jurisdiction did not fail to meet a minimum standard of reasonableness. That decision deserves recognition under the principles of international comity.

---

[13] As it is unnecessary, we do not discuss the other ground relied upon by the Tribunal and confirmed by the Paris Court, Dhaheri's personal responsibility as the sole proprietor of iCapital S/E.

## III.    Conclusion

In sum, we hold that a court of competent jurisdiction has determined that Dhaheri was properly within the jurisdiction of the arbitration.    Because the Arbitration Award is enforceable, Cerner has established both elements of *quasi in rem* jurisdiction with respect to Dhaheri: Cerner possesses a valid judgment against Dhaheri, and Dhaheri owns property that is located in Oregon.  Based on the Paris Court decision issued subsequent to the district court's order, we reverse the district court's order dismissing this case for lack of personal jurisdiction and remand for further proceedings.[14]

**REVERSED     and     REMANDED     for     further proceedings.**

---

[14] As it does not appear that iCapital, LLC owns any property in Oregon, its status in the litigation at this point is unclear.  That has not been a topic of serious discussion on appeal.  If they are interested, the parties may address that question on remand.